2016 ND 72

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Blaise M. O'CONNOR, Defendant and Appellee.**

No. 20150299.

Supreme Court of North Dakota.

March 28, 2016.

 

Cherie L. Clark (argued), Assistant State's Attorney and Reid A. Brady (appeared), Assistant State's Attorney, Fargo, N.D., for plaintiff and appellant.

Mark A. Friese (argued) and Bruce D. Quick (on brief), Fargo, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] The State appeals from an order suppressing the result of an Intoxilyzer chemical test in its prosecution of Blaise O'Connor for driving under the influence of alcohol. We affirm the suppression order because the law enforcement officer after placing O'Connor under arrest did not inform him of the complete implied consent advisory before administering the Intoxilyzer test.

I

[¶ 2] On May 24, 2015, a highway patrol officer stopped O'Connor's vehicle for a defective taillight. The officer observed O'Connor had slurred speech and bloodshot and watery eyes. O'Connor admitted he consumed some alcohol. The officer administered field sobriety tests, recited a complete implied consent advisory and asked O'Connor if he would submit to an onsite screening test. The State contended O'Connor was read the implied consent advisory contained in N.D.C.C. § 39–20–01(3)(a), relating to chemical tests, which includes the warning that "refusal to take the test ... is a crime punishable in the same manner as driving under the influence." O'Connor contended he was given the implied consent advisory contained in N.D.C.C. § 39–20–14(3), relating to screening tests, which includes the warning that "refusal to take the screening test is a crime." O'Connor submitted to the onsite screening test which revealed a blood alcohol level above the presumptive limit.

[¶ 3] The officer placed O'Connor under arrest for driving under the influence of alcohol and drove him to the Cass County Jail. At the jail, the officer asked O'Connor whether he remembered the implied consent advisory previously read to him and O'Connor responded, "yeah, I think so." It is undisputed that before O'Connor submitted to the Intoxilyzer chemical test the officer provided him with a partial implied consent advisory which failed to inform him that refusal to take a chemical test "is a crime punishable in the same manner as driving under the influence." N.D.C.C. § 39–20–01(3)(a). The chemical test revealed a blood alcohol level above the presumptive limit.

[¶ 4] O'Connor moved to suppress the result of the Intoxilyzer chemical test because the officer failed to provide him with the complete implied consent advisory after he was arrested and before he submitted to the chemical test. The district court agreed with O'Connor and suppressed the result of the chemical test, concluding:

"[A] plain language reading of the statutes does not allow the implied consent advisory for screening tests under § 39–

20–14 to be a substitute for the implied consent advisory for chemical tests under § 39–20–01. As a result, [the officer] failed to provide the Defendant with a proper and complete implied consent advisory after arrest and before conducting the Intoxilyzer chemical tests. Pursuant to § 39–20–01(3)(b), the Defendant's Intoxilyzer chemical test is not admissible and must be excluded from these proceedings."

## II

■ [¶ 5] The State argues the district court erred in granting O'Connor's motion to suppress the Intoxilyzer chemical test result.

[¶ 6] In *State v. Boehm*, 2014 ND 154, ¶ 8, 849 N.W.2d 239, we said:

"The applicable standard of review of a district court's decision to grant or deny a motion to suppress evidence is well established.

"A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. We do not conduct a de novo review. We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact.

"*State v. Whitman*, 2013 ND 183, ¶ 20, 838 N.W.2d 401. 'Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.' *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381."

[¶ 7] "'Section 39–20–01, N.D.C.C., sets forth the implied consent requirements for motor vehicle drivers in general.'" *State v. Bauer*, 2015 ND 132, ¶ 7, 863

N.W.2d 534 (quoting *State v. Birchfield*, 2015 ND 6, ¶ 7, 858 N.W.2d 302). Section 39–20–01(3), N.D.C.C., was amended by the Legislature in 2015 to add subdivision b. *See* 2015 N.D. Sess. Laws ch. 268, § 9. This legislation was declared an emergency measure and was approved, filed and became effective on April 15, 2015. *Id.* at § 15. This is more than one month before O'Connor's arrest. Section 39–20–01(3), N.D.C.C., at the time of the offense and currently, provides:

"3. a. The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.

 b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39–08–01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a."

■ [¶ 8] "'Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears.'" *State v. Rufus*, 2015 ND 212, ¶ 15, 868 N.W.2d 534 (quoting *State v. Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775). O'Connor was the "individual charged," and it is undisputed the offi-

cer gave him an incomplete advisory before administering the chemical test by failing to advise that refusal to take the chemical test is a crime punishable in the same manner as driving under the influence. . Therefore, under the plain terms of N.D.C.C. § 39–20–01(3)(b), the Intoxilyzer test result is inadmissible in a criminal proceeding for driving under the influence.

[¶ 9] The State posits two arguments in an attempt to evade the plain language of the statute. First, the State contends the district court erred in finding that prior to the onsite screening test the officer gave O'Connor the advisory required under N.D.C.C. § 39–20–14(3) ("officer shall inform the individual ... that refusal to take the screening test is a crime") rather than the advisory required under N.D.C.C. § 39–20–01(3)(a) ("officer shall inform the individual charged ... that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence"). Because O'Connor indicated he recalled the advisory given before the onsite screening test, the State argues this advisory was sufficient under *State v. Salter*, 2008 ND 230, 758 N.W.2d 702.

[¶ 10] In *Salter*, the officer, prior to giving a preliminary breath test, read the defendant the implied consent advisory informing him that if he refused to submit to testing his driving privileges could be revoked for up to four years. 2008 ND 230, ¶ 2, 758 N.W.2d 702. After the defendant was placed under arrest the officer told the defendant the implied consent discussed earlier applied to the blood draw, and the defendant replied, "yup, yes, go ahead, yup." *Id.* The defendant moved to suppress the result of the blood test, arguing he did not voluntarily consent to the test and statutory implied consent did not apply because the officer did not read the mandatory implied consent

advisory a second time before the blood test was administered. *Id.* at ¶ 4. We concluded the district court did not err in denying the defendant's suppression motion, reasoning:

"Salter was informed he was under arrest for driving under the influence, Arndt had advised him what implied consent was prior to his arrest, he was told implied consent applied to the blood test, and he indicated he understood. On the facts and circumstances of this case, we conclude the statutory procedures for implied consent were complied with, Salter's consent was implied under the statute, and he did not affirmatively withdraw his consent. The district court was not required to find Salter voluntarily gave actual consent for the blood test. We conclude the district court did not err in denying Salter's request to suppress the results of the blood-alcohol test."

*Id.* at ¶ 10.

[¶ 11] Assuming the district court erred in finding the officer did not give the implied consent advisory under N.D.C.C. § 39–20–01(3)(a) prior to the onsite screening test, *Salter* does not support the State's argument. When *Salter* was decided, N.D.C.C. §§ 39–20–01 and 39–20–14 (2007) required identical implied consent advisories be given before submission to the screening test and the chemical test. Neither statute stated any consequence for an officer's failure to strictly comply with those requirements. Under the reasoning of *Salter*, the consequence for an officer's failure to comply with the statutory procedures required the district court to determine whether the defendant voluntarily gave "actual consent" for the chemical test under the Fourth Amendment. 2008 ND 230, ¶¶ 6, 7, 10, 758 N.W.2d 702. The statute has changed since *Salter* was decided. In 2013 the Legislature made re-

fusal to take either a screening test or a chemical test a crime, *see, e.g., State v. Smith*, 2014 ND 152, ¶ 9, 849 N.W.2d 599, and in 2015 the Legislature attached specific consequences to an officer's failure to give the advisory *after* the defendant's arrest and before submitting to a chemical test. *See* 2015 N.D. Sess. Laws ch. 268, § 9. Although two advisories have been required under the implied consent laws, the Legislature now has dictated that the test "is not admissible in any criminal or administrative proceeding" if the officer fails to inform the "individual charged" of the implied consent advisory before a chemical test. N.D.C.C. § 39–20–01(3)(b). Permitting an implied consent advisory given before an arrest to satisfy this requirement is wholly incompatible with the statute's language. To the extent the *Salter* rationale would allow an onsite screening advisory to compensate for an incomplete advisory given after a defendant's arrest and before a chemical test is administered, it has been abrogated by the plain language of the 2015 amendment to N.D.C.C. § 39–20–01(3).

[¶ 12] Second, the State argues voluntary consent is an independent ground for admission of O'Connor's chemical test, and relies on this Court's decisions in *Fossum v. N.D. Dep't of Transp.*, 2014 ND 47, 843 N.W.2d 282, *City of Bismarck v. Hoffner*, 379 N.W.2d 797 (N.D.1985), and *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982). These cases hold that the provisions of N.D.C.C. § 39–20–01 do not apply if a person voluntarily submits to a chemical test under Fourth Amendment consent principles. *See Fossum*, at ¶¶ 11–13; *Hoffner*, at 798–801; *Abrahamson*, at 215–18. This Court explained in *Fossum*, at ¶ 12, "[a]s *Hoffner* and *Abrahamson* have recognized, the purpose of the implied-consent law is to have a procedure in place when someone says no; N.D.C.C. § 39–20–01 does not apply when the driver con-

sents to testing." *Hoffner* involved a situation where the defendant consented to a blood test before being placed under arrest for violating N.D.C.C. § 39–20–01 and this Court reasoned, "[h]ad it been the Legislature's intent to place this special limit on an individual's historic ability to consent to the relinquishment of a right, it would have so provided in the enactment." 379 N.W.2d at 799 (footnote omitted). These three cases were decided under the law in effect before the 2013 and 2015 amendments to the implied consent statutes. In 2015 the Legislature responded to the *Hoffner* Court's invitation and enacted N.D.C.C. § 39–20–01(3)(b), making chemical test results inadmissible in criminal or administrative proceedings for violations under its provisions unless the officer informs the defendant of the chemical test implied consent advisory after the defendant has been arrested. Therefore, the implied consent law can no longer be viewed as simply supplying a procedure "when someone says no." *Fossum*, at ¶ 12. The implied consent law currently applies equally to people who consent and say "yes" because only after consent is there a test that is inadmissible. *See* N.D.C.C. § 39–20–04(1) ("If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given"). The Legislature has made chemical test results inadmissible under N.D.C.C. § 39–20–01(3)(b) unless the advisory requirements of N.D.C.C. § 39–20–01(3)(a) have been fulfilled, regardless of a person's "voluntary consent." The voluntary consent holdings in *Fossum, Hoffner* and *Abrahamson* have been abrogated by the plain language of the amended statute as well.

 [¶ 13] The parties argue about the impact of the 2015 legislative history for N.D.C.C. § 39–20–01(3)(b). But we need not explore legislative history when the

Legislature has clearly and unambiguously spoken. N.D.C.C. § 1–02–05 ("When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *Meier v. N.D. Dep't of Human Servs.*, 2012 ND 134, ¶ 9, 818 N.W.2d 774. The Legislature has directed that a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a criminal or administrative proceeding. "We give special deference to the Legislature when a[n implied consent] statute governing admissibility of evidence is part of a legislative design that essentially authorizes and creates the item of disputed evidence." *City of Fargo v. Ruether*, 490 N.W.2d 481, 484 (N.D.1992) (Legislature can limit admissibility of alcohol screening test). Adopting the State's arguments here would eviscerate the 2015 amendment to N.D.C.C. § 39–20–01(3).

[¶ 14] The officer did not provide O'Connor a complete chemical test implied consent advisory after his arrest and before submission to the Intoxilyzer test. Therefore, under N.D.C.C. § 39–20–01(3)(b), the Intoxilyzer test result is inadmissible in this criminal proceeding. The district court did not err in granting O'Connor's motion to suppress.

### III

[¶ 15] We affirm the suppression order.

[¶ 16] JEROD E. TUFTE, D.J., LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

[¶ 17] The Honorable JEROD E. TUFTE, D.J., sitting in place of KAPSNER, J, disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 18] I concur in the result. It seems odd, if not absurd, that a person who agrees to take the test after an advisory which neglected to tell the person that the refusal to take the test is a crime punishable in the same manner as driving under the influence and was told only that it was a crime to refuse was disadvantaged by the advisory. Are we to assume that had the person been given the proper advisory he would have refused to take the test? I understand that had the person refused to take the test and been convicted and punished in the same manner as driving under the influence, the person could very well have been disadvantaged by the advisory in this instance. Nevertheless, I agree that the Legislature has established a bright line and the statutes leave no room for this Court to engage in a determination of legislative intent or whether or not a person was disadvantaged by an incorrect or incomplete advisory.

[¶ 19] GERALD W. VANDE WALLE, C.J.