Filed 9/13/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 210

Tre Thomas Schoon, Plaintiff and Appellant

v.

North Dakota Department 

of Transportation, Defendant and Appellee

No. 20180049

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Danny L. Herbel, Bismarck, N.D., for plaintiff and appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, N.D., for defendant and appellee.

Schoon v. N.D. Dep’t of Transportation

No. 20180049

Tufte, Justice.

[¶1] Tre Thomas Schoon appealed from a district court judgment affirming a Department of Transportation decision suspending his driving privileges for two years. Schoon argues that because he was given an incomplete implied consent advisory, evidence of his blood test results was inadmissible under N.D.C.C. § 39-20-

01(3)(b). We reverse.

I

[¶2] In June 2017, Deputy Jeremy Alm was on patrol in Burleigh County when he observed a vehicle that appeared to be speeding. Deputy Alm initiated a traffic stop and made contact with the driver, later identified as Schoon. Deputy Alm smelled the odor of marijuana coming from the vehicle and asked Schoon to exit the vehicle. Deputy Alm noticed an odor of alcohol coming from Schoon’s breath and observed that Schoon appeared to have bloodshot, watery eyes. Schoon admitted to having drunk two or three beers. Schoon consented to a search of his vehicle, which revealed two open cans of beer, one full can of beer, and several empty beer cans in the box of his pickup. Schoon agreed to perform field sobriety tests, including the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Relying on the field test results, Deputy Alm read the North Dakota implied consent advisory and asked Schoon to take a preliminary breath test. Schoon consented to the breath test. The test result was higher than the presumptive limit. Deputy Alm placed Schoon under arrest for driving under the influence, and read Schoon 
Miranda
 rights and an implied consent advisory. The advisory provided:

As a condition of operating a motor vehicle on a highway, or on a public or private area, to which the public has [a] right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs. I must inform you that . . . North Dakota law requires you to submit to a chemical test to determine whether you are under the influence of alcohol. Refusal to take the test as directed by a law enforcement officer may result in a revocation of your driver’s license for a minimum of 180 days and potentially up to three years. Do you understand these consequences? Do you consent to take the test that I am requesting?

[¶3] Deputy Alm then asked Schoon if he would be willing to provide a blood sample. Schoon consented.

[¶4] An administrative hearing was held. Schoon moved to suppress the blood test results because of Deputy Alm’s failure to recite the part of the statutory advisory stating that refusal to consent to a blood test is a crime punishable in the same manner as driving under the influence. At the hearing, Deputy Alm explained that if an individual refuses the blood test, he then asks for a chemical breath test. If the driver refuses the breath test, then Alm reads the section of the statutory advisory explaining that refusal is punishable in the same manner as DUI. Deputy Alm testified he did not read the part of the implied consent advisory indicating that refusal is a crime punishable in the same manner as DUI, because Schoon consented to the initial request for a chemical blood test.

[¶5] The hearing officer’s written decision denied Schoon’s motion to exclude the evidence of the blood test, concluding:

Deputy Alm recited an implied consent advisory that accurately stated the consequences of a refusal. The advisory provided by Deputy Alm to Mr. Schoon satisfied the requirements of 39-20-01, subsection 3a in light of the holding in 
Birchfield
, and therefore, the test results are admissible under subsection 3b. NDCC 39-20-01.

Schoon requested judicial review, and the district court affirmed the hearing officer’s decision that Deputy Alm’s reading of the implied consent advisory fulfilled the requirements of N.D.C.C. § 39-20-01(3) and the blood sample was properly obtained.

II

[¶6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs this Court’s review of the Department of Transportation’s administrative decision to suspend or revoke a driver’s license. 
McCoy v. N.D. Dep’t of Transp.
, 2014 ND 119, ¶ 6, 848 N.W.2d 659. Under N.D.C.C. § 28-32-46, this Court must affirm the agency’s decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶7] This Court has explained:

When reviewing an administrative agency’s decision, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. This Court does not make independent findings or substitute its judgment. Once the facts are established, their significance presents a question of law, which we review de novo. Our standard of review for a claimed violation of a constitutional right is de novo.

McCoy
, 2014 ND 119, ¶ 8, 848 N.W.2d 659 (citations and internal quotations omitted).

III

[¶8] Schoon argues the chemical test results are inadmissible under N.D.C.C. § 39-

20-01(3)(b) because the implied consent advisory read by Deputy Alm was not the complete advisory set out in subdivision 3(a). The Administrative Hearing Officer determined the test results were admissible, despite the failure to provide Schoon with the complete implied consent advisory, and subsequently revoked Schoon’s driving privileges for a period of two years. Schoon has requested that this Court determine whether the chemical test result was admissible. We conclude the test result was not admissible.

[¶9] Upon placing an individual under arrest for driving under the influence of alcohol or drugs or being in actual physical control of a vehicle while under the influence of alcohol or drugs, an officer may request the individual submit to a chemical test of the individual’s blood, breath, or urine. N.D.C.C. § 39-20-01. “The law enforcement officer shall determine which of the tests is to be used.” N.D.C.C. § 39-20-01(2). The admissibility of test results is governed by detailed statutory requirements. Under N.D.C.C. § 39-20-01(3)(b), a chemical test administered to determine alcohol concentration is not admissible in an administrative proceeding if the law enforcement officer fails to inform the individual charged as required under § 39-20-01(3)(a).

[¶10] At the time Schoon was arrested and at the time of the hearing when the test result was offered into evidence, N.D.C.C. § 39-20-01(3) provided:

a. The 
law enforcement officer shall inform the individual charged
 that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; 
that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence
; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual’s driving privileges.

b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.

(Emphasis added.)

[¶11] The State asks us to limit application of this admissibility statute where a blood test is required because during the period after 
Birchfield
 was decided on June 23, 2016, and before the effective date of the amendment on August 1, 2017, it was impractical if not impossible for an officer to request consent for a blood test and have the result admitted into evidence unless a warrant was obtained. 
Birchfield v. North Dakota
, 136 S. Ct. 2160 (2016). As discussed below, 
Birchfield
 did not abrogate the admissibility requirements of N.D.C.C. § 39-20-01(3).

[¶12] Our analysis begins with N.D.C.C. § 39-20-01(3)(b).  As we explained in 
State v. O’Connor
, 2016 ND 72, 877 N.W.2d 312, this provision sets out clear and specific instructions for exactly what information must be communicated to a driver who is arrested for driving under the influence. Subdivision (b) strictly requires communicating all the information required by subdivision (a) before a test result is admissible. 
O’Connor,
 at ¶¶ 8, 11 (applying same version of § 39-20-01(3) at issue here). Considering only the statute as explained by 
O’Connor
, the advisory was incomplete and thus inadmissible under subdivision (b).

[¶13] We must then consider whether, as the State argues, N.D.C.C. § 39-20-01(3) has been implicitly abrogated by the 
Birchfield
 decision. In the three consolidated cases in 
Birchfield
, the U.S. Supreme Court reached different conclusions under the criminal refusal statutes at issue depending on whether a blood or breath test was requested.

[¶14] As to blood tests, the Court concluded “that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.” 
Birchfield
, 136 S. Ct. at 2186.  The Court went on to hold that refusal of a warrantless blood test may not be the subject of a criminal penalty:

There is no indication in the record or briefing that a breath test would have failed to satisfy the State’s interests in acquiring evidence to enforce its drunk-driving laws against Birchfield. And North Dakota has not presented any case-specific information to suggest that the exigent circumstances exception would have justified a warrantless search. Unable to see any other basis on which to justify a warrantless test of Birchfield’s blood, we conclude that Birchfield was threatened with an unlawful search and that the judgment affirming his conviction must be reversed.

Id.
 (citations omitted).

[¶15] In 
Beylund
, a separate case consolidated with 
Birchfield
, the driver submitted to a requested chemical blood test. 
Id.
 at 2172. The Supreme Court remanded that case “to reevaluate Beylund’s consent given the partial inaccuracy of the officer’s advisory.” 
Id.
 at 2186. 
Birchfield
 did not expressly declare unconstitutional part of North Dakota’s implied consent advisory. Only the reference to “blood” in the criminal refusal statute is clearly declared to be facially invalid by 
Birchfield
. 
Id.
 (holding “motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense”); N.D.C.C. § 39-08-01(1)(e) (punishing an individual’s refusal of a “chemical test, or tests, of the individual’s blood, breath, or urine”). If the U.S. Supreme Court intended to declare facially invalid the advisory given to Birchfield and Beylund, it made little sense to remand in 
Beylund
.

[¶16] The State argues 
Birchfield
 implicitly required removal of any reference to criminal penalties for refusal from the statutory advisory to avoid an unconstitutional application of the implied consent law. We narrowly construe decisions declaring statutes unconstitutional, limiting their effect to provisions directly at issue. 
See
 N.D.C.C. § 1-02-20. If the claim is a facial challenge, we examine whether a statute has both constitutional and unconstitutional applications. Ordinarily, facial invalidation is unnecessary when the court can enjoin only the unconstitutional applications. 
Ayotte v. Planned Parenthood
, 546 U.S. 320, 329-331 (2006) (stating that “we restrain ourselves from rewriting state law to conform it to constitutional requirements even as we strive to salvage it”) (internal quotation omitted).

[¶17] The advisory in effect at the time of Schoon’s arrest and hearing required no mention of blood or breath, only of a “chemical test,” which could be either test. N.D.C.C. § 39-20-01(3)(a) (2015). Thus, there was no facially unconstitutional language in the advisory. The State concedes the advisory had constitutional application to breath tests and was not facially unconstitutional following 
Birchfield
. As a result of 
Birchfield, 
when this statutory advisory was in effect and an officer requested a blood test, the advisory was misleading insofar as refusal of “
any 
chemical test” (emphasis added) was no longer a crime punishable in the same manner as DUI. But, where an officer requested a breath test, the advisory was accurate and not misleading. Because the advisory statute has constitutional application to breath tests, we conclude 
Birchfield 
did not implicitly hold that § 39-

20-01(3)(a) was unconstitutional.

[¶18] We must next consider whether the constitutional holding in 
Birchfield
 supports a challenge to the subdivision 3(a) advisory or the subdivision 3(b) admissibility requirement as applied to requests for blood tests. We are not presented with a traditional as-applied constitutional claim here. The driver asserts no violation of his constitutional rights. Instead, the State argues, and the hearing officer and district court agreed, that to avoid an unconstitutional application of the advisory following 
Birchfield
, an officer may omit a portion of an otherwise mandatory advisory without incurring the statutory penalty of inadmissibility. The State asks us to conclude that reading the advisory to a driver prior to requesting a blood test is itself unconstitutional under 
Birchfield
. But as the State concedes, the exact same advisory is constitutional when a breath test is requested.

[¶19] Inaccurate advice as to consequences resulting from refusal of a blood test may inform whether there was voluntary consent, but the inaccurate advisory is not itself a constitutional violation under 
Birchfield
. 136 S. Ct. at 2186 (remanding 
Beylund
 “to reevaluate Beylund’s consent given the partial inaccuracy of the officer’s advisory”). After 
Birchfield
, a reading of the 2015 advisory language (and only that advisory language without further explanation about the effect of 
Birchfield
) would make it extremely difficult for the State to also establish voluntary consent. That § 39-20-01(3)(a) requires an officer to warn of criminal charges, some of which are proscribed by 
Birchfield
, on pain of inadmissibility under 3(b), may well put the State in a position where there is no lawful way to obtain a voluntary, admissible blood test result. However, 
Birchfield
 expressly preserved such evidentiary consequences:

Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and 
evidentiary consequences
 on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and 
nothing we say here should be read to cast doubt on them
.

Birchfield
, 136 S. Ct. at 2185 (citations omitted) (emphasis added).

[¶20] The legislature, in crafting a statute that is clear and specific about the advisory officers must give, had an unintended effect in the wake of 
Birchfield
. The advisory was accurate when enacted as to all chemical tests, and remained accurate post-
Birchfield 
where a breath test would be requested. Yet the admissibility requirement in § 39-20-01(3)(b) was not conditioned on an accurate advisory or a driver’s obtaining an understanding of the consequences of the choices available. Section 39-20-01(3)(b) simply conditions admissibility on whether the officer informed the driver of the contents of (3)(a).

[¶21] Following 
Birchfield
, there was every reason for the State to amend this statute at the earliest opportunity. It was amended during the next legislative session, but relatively late in the session and without an emergency clause, which would have given it immediate effect. In essence, what the State asks of this Court is to amend the statute under the guise of interpreting 
Birchfield
, reaching the same substantive result as the 2017 legislative amendment. Our authority to declare a statute’s constitutionality does not permit that result here.

[¶22] By asking us to reinterpret the plain meaning of the admissibility requirement, the State seeks elimination of a barrier to admitting evidence critical to meet the State’s burden. We are aware of no other case in which the State has similarly persuaded a court to void on constitutional grounds a barrier to admissibility of evidence to be used in support of the State’s case. It is for a driver or defendant to claim a statute, although valid in some circumstances, is unconstitutional as applied to his facts. Schoon did not challenge the statute’s constitutionality at all, let alone as applied to him.

[¶23] The State implicitly asks for an unusual reading of the Fourteenth Amendment in its “as applied” challenge. The Fourth Amendment analysis in 
Birchfield 
applies to the states through the Fourteenth Amendment, which provides: “
No state shall
 make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; 
nor shall any state
 deprive any person of life, liberty, or property, without due process of law.” U.S. Const. Amend. 14 § 1 (emphasis added). The Fourth Amendment, as incorporated through the Fourteenth, is a shield against state action. We reject the argument that the State may deploy the Fourteenth Amendment as a sword to cut away inconvenient barriers to admitting its own evidence.

[¶24] We do not declare any part of N.D.C.C. § 39-20-01(3) to be facially unconstitutional as a result of 
Birchfield
. Because Schoon did not challenge the constitutionality of the statutes as applied to him, and because the State is not permitted to omit part of the statutory advisory to avoid a potential as-applied challenge, the admissibility statute must be applied as written.

IV

[¶25] We reverse the district court’s judgment and the hearing officer’s decision to suspend Schoon’s driving privileges for two years. We order the Department to reinstate Schoon’s driving privileges.

[¶26] Jerod E. Tufte

Daniel J. Crothers

Jon J. Jensen

Crothers, Justice, specially concurring.

[¶27] I agree with and I have signed the majority opinion.  I reluctantly write separately to respond to the dissent’s suggestion the result in this case is borne of choice by the majority.  I also write to invite legislative consideration whether the implied consent advisory should be repealed.

[¶28] The dissent opens by criticizing a purported choice by the majority and closes by suggesting the majority lacks common sense.  
See
 dissent at ¶ 37 (“the majority instead chooses to require the law enforcement officer to have given an advisory . . . .”); 
id.
 at ¶ 48 (“I believe there is still room for common sense in the application of our laws . . . .”).  In between, the majority is criticized for the “absurd result” obtained by applying the statute as written.  
Id.
 at ¶ 46.

[¶29] The separation of governmental powers requires that the judiciary apply statutes rather than craft them.  
See
 
N.D. Legislative Assembly v. Burgum
, 2018 ND 189, ¶ 40, 916 N.W.2d 83.  That separation of powers authorizes the Legislature to articulate public policy through passage of laws, and authorizes the courts to interpret and apply those laws, including declaring laws unconstitutional.  
See
 dissent at ¶ 42.

[¶30] Here, the law in effect when Schoon was arrested mandated that law enforcement give a specific implied consent advisory.  Majority at ¶ 2.  Deputy Alm admittedly did not comply with the requirements of N.D.C.C. § 39-20-01(3) when he modified the advisory by deleting that portion relating to blood testing.  
Id.
 at ¶ 5.  Like the advisory itself, the Legislature specified the consequence of a law enforcement officer not reading the statutory advisory.  In the Legislature’s words:

“A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.”

N.D.C.C. § 39-20-01(3)(b).

[¶31] This statutory exclusionary rule in N.D.C.C. § 39-20-01(3)(b) required suppression of the blood test results due to Deputy Alm’s deviation from the required advisory.  The only way to obtain a different result is to conclude the blood test portion of N.D.C.C. § 39-20-01(3)(a) is unconstitutional and was severed from the statute.  
See
 dissent at ¶¶ 42-43.  But the United States Supreme Court did not hold that portion of the statute unconstitutional.  Rather, the Court held it was unconstitutional to presume under the penalty of criminal law that a driver impliedly consented to a blood test.  
Birchfield v. North Dakota
, 136 S.Ct. 2160, 2185-86 (2016).  The advisory in N.D.C.C. § 39-20-01(3)(a) was not part of the United States Supreme Court’s ruling and I submit we have no basis for “effectively [making] that part of the advisory unconstitutional.”  Dissent at ¶ 43; 
see
 majority at ¶ 17 (“[W]e conclude 
Birchfield
 did not implicitly hold that § 39-20-01(3)(a) was unconstitutional.”).

[¶32] As a result of the 2016 
Birchfield
 decision, the version of N.D.C.C. § 39-20-01(3)(a) then in effect constricted law enforcement to reading the full advisory or risk not having a resulting chemical tests admissible in a criminal or administrative proceeding.  The holding in 
Birchfield
 also meant law enforcement no longer could read the blood test portion of the advisory and subsequently use a blood test in criminal proceedings.  
But see
 
Beylund v. Levi
, 2017 ND 30, ¶ 28, 889 N.W.2d 907 (constitutional exclusionary rule not applied to administrative proceeding).  Certainly, these results presented law enforcement with a conundrum.  But it was just that and not more; law enforcement still could read the statutorily required advisory and request a chemical breath test.  Majority at ¶ 20.

[¶33] The Legislature recognized the conundrum and amended the statute during the 2017 session.  Majority at ¶ 21; dissent at ¶ 46.  But the 2017 Legislature did not pass amendments to the advisory with an emergency clause.  Therefore, the modifications regarding the advisory and blood tests became effective August 1, 2017 rather than sooner.  
Id.
  The dissent recognizes this legislative inaction and states:

“I do not know why the 2017 Legislature, in amending § 39-20-01(3)(a), did not make it effective immediately by attaching an emergency clause to the bill.  The fact remains they recognized the problem and had amended the statute to make it constitutionally firm when this arrest took place.  Because they did not make it effective immediately, the majority presumes, under the guise of the plain language doctrine, that the Legislature intended the officer to give an advisory which, if the defendant, as here, agreed to take the test would make the test inadmissable.  I believe that is an absurd result, a result we seek to avoid in construing statutes.”

Id.
 (citation and footnote omitted).

[¶34] I too do not know why the 2017 Legislature did not make THESE changes effective immediately.  But I respectfully disagree that the Legislature’s use of a constitutionally normal effective date (rather than emergency effective date) renders the resulting plain meaning of the statute “absurd.”  Instead, the result is just as intended—the changes became law on August 1, 2017.  N.D.C.C. § 39-20-01, Source Note; S.L. 2017, ch. 268, § 4.  Evidence of this legislative intent can be drawn from the lack of an emergency clause.  It also can be drawn from the fact that another 2017 modification to § 39-20-01(3)(a) was enacted as an emergency and became effective on April 21, 2017.  N.D.C.C. § 39-20-01, Source Note; S.L. 2017, ch. 108, § 15.  Given this history about which provision was, and which was not, enacted with an emergency clause, the Legislature must be presumed to have acted intentionally.  
See
 
Meier v. N.D. Dep’t of Human Servs.
, 2012 ND 134, ¶ 10, 818 N.W.2d 774 (courts presume Legislature acts with purpose and does not perform idle acts).  The judiciary should respect the deliberate legislative choice, and we should not effectively provide an emergency clause to the amendment in question when the Legislature itself clearly knew how to, but did not, utilize the process.

[¶35] Finally, I invite the Legislature to consider whether the statutory implied consent advisory and statutory exclusionary rule should be retained.  The implied consent advisory in N.D.C.C. § 39-20-01(3) has become so nuanced and conditioned that serious questions have been raised whether it is overly confusing and its utility has expired.  
See, e.g.,
 
Schmidt v. Levi
, 2016 ND 80, ¶ 8, 877 N.W.2d 808 (driver argued implied consent advisory was confusing); 
State v. Bauer
, 2015 ND 132, ¶ 12, 863 N.W.2d 534 (driver argued issuance of 
Miranda
 warnings and an implied consent advisory provide contradicting admonitions); 
State v. Ayala
, 2017 ND 126, ¶ 6, 894 N.W.2d 865 (driver argued advisory could not simply be read and something more is required to “inform” a driver).  Even if the advisory itself is not repealed, I urge the Legislature to consider removing the exclusionary rule so that cases can be decided on the traditional grounds of whether the implied consent advisory adversely affected an operator’s consent to chemical testing.  
See
 
State v. Fleckenstein
, 2018 ND 52, ¶ 9, 907 N.W.2d 365 (totality of the circumstances approach must be taken in determining voluntariness of consent to a blood test).

[¶36] Daniel J. Crothers

Jon J. Jensen

VandeWalle, Chief Justice, dissenting.

[¶37] Rather than acknowledging an advisory which was legally accurate, the majority instead chooses to require the law enforcement officer to have given an advisory which, if it had been given, the majority, at ¶ 19, recognizes “may well put the State in a position where there is no lawful way to obtain a voluntary, admissible blood test result.” I dissent.

[¶38] Prior to Schoon’s June 2017 arrest, the Supreme Court of the United States announced its decision in 
Birchfield v. North Dakota
. The Supreme Court held unconstitutional the imposition of criminal penalties for refusing to submit to a warrantless blood test. 
Birchfield v. North Dakota
, 136 S. Ct. 2160, 2186 (2016) (concluding drivers are not deemed to have consented to submit to a blood test on pain of committing a criminal offense). In response to the 
Birchfield 
decision, the 65th Legislative Assembly amended N.D.C.C. § 39-20-01(3)(a), which now provides:

The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual’s driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. 
If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant
.

(Emphasis added).

[¶39] Although the amendment was passed in April 2017, it was not effective until August 2017, approximately two months after Schoon was arrested. Regardless of the effective date, I believe the implied consent advisory Deputy Alm read to Schoon was proper.

[¶40] Schoon and the majority rely on 
State v. O’Connor
, 2016 ND 72, 877 N.W.2d 312, a pre-
Birchfield 
criminal case, to support his position that the officer’s “incomplete” advisory necessitates suppression of the blood test results. In 
O’Connor
, the officer initiated a traffic stop for a defective taillight and discovered the driver (appellant) appeared to be under the influence of alcohol. 
Id.
 at ¶ 2. The officer administered field sobriety tests, recited a complete implied consent advisory, and asked the appellant if he would submit to an onsite screening test. 
Id
. The appellant’s blood alcohol level was above the presumptive limit and the officer placed him under arrest and drove him to the county jail. 
Id.
 at ¶¶ 2-3. Upon arriving at the jail, the officer asked whether the appellant remembered the pre-arrest advisory, but failed to provide a complete post-arrest advisory, thus failing to inform the appellant that refusal to take a chemical test is a crime punishable in the same manner as a DUI. 
Id.
 at ¶ 3. Accordingly, the appellant was left without an accurate and complete understanding of his rights and responsibilities under the law. We concluded the results of a chemical test were inadmissible under N.D.C.C. § 39-20-

01(3)(b) because the officer failed to provide a complete implied consent advisory to the appellant after he was arrested. 
Id.
 at ¶ 14.

[¶41] 
O’Connor
 is distinguishable from this case. Here, Schoon was given a post-

arrest advisory that accurately explained his rights and responsibilities under the law. The omission of language regarding criminal penalties for refusal to submit to a blood test was proper because the Supreme Court had determined that penalty was unconstitutional.

[¶42] Schoon argues and the majority agrees that neither the executive branch nor the Department of Transportation have the authority to change or amend the statutorily-mandated implied consent advisory. However, the Supreme Court does have authority to strike down statutory provisions as unconstitutional, as was implicitly done in 
Birchfield
. 
Birchfield
, 136 S. Ct. 2160, 2186 (2016); 
see Heart of Atlanta Motel, Inc. v. United States
, 85 S. Ct. 1, 2 (1964) (recognizing the Supreme Court’s power to declare acts of the legislature unconstitutional has been uniformly recognized since
 Marbury v. Madison
). Additionally, in N.D.C.C. § 1-02-20, our Legislature has created a severability clause which provides:

In the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered.

[¶43] Accordingly, the omitted language from the advisory Deputy Alm recited was not an executive overreach. Deputy Alm was complying with the Supreme Court decision that effectively made that part of the advisory unconstitutional. Under these circumstances, the severing of the unconstitutional language from the rest of the statute was proper and still gives full effect to the rest of the advisory.

[¶44] Other courts have reached this same conclusion. The purpose of providing an implied consent advisory is to inform the individual of the legal consequences faced if they fail to consent to chemical testing and to ensure their choice is knowing and conscious. 
See Garlick v. Commonwealth, Dep’t of Transp., Bureau of Driver Licensing
, 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018). The Superior Court of Pennsylvania recently explained:

Following 
Birchfield
, and as the Superior Court concluded thereafter, a licensee cannot be criminally punished for refusing a police officer’s request to test his blood pursuant to the Implied Consent Law. Although, at the time Trooper requested that Licensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under Section 3804(c) for refusing a test of his blood, Licensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of Licensee’s refusing the requested blood test. Licensee’s argument is, in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), [Penn] DOT and the police had to continue to apply Section 1547(b)(2)(ii). However, the effect of 
Birchfield 
and the Superior Court cases that followed was to render the criminal penalties warned of in Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the [Motor] Vehicle Code. See 1 Pa. C.S.[A.] § 1925.

Commonwealth v. Robertson
, 186 A.3d 440, 445-46 (Pa. Super. Ct. 2018) (
citing
 
Garlick
, 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018)).

[¶45] After determining a blood test was to be given, as Deputy Alm was directed to do by statute, had he recited the unconstitutional penalty from the advisory he would have been providing Schoon with information that was no longer legally accurate in light of 
Birchfield
. Accordingly, it was proper for Deputy Alm to omit the language. If, of course, the advisory provided by Deputy Alm was not harmonized with the current constitutional and statutory landscape, I would not approve of the omission from the otherwise statutorily-required advisory.

[¶46] I do not know why the 2017 Legislature, in amending § 39-20-01(3)(a), did not make it effective immediately by attaching an emergency clause to the bill. The fact remains they recognized the problem and had amended the statute to make it constitutionally firm when this arrest took place. Because they did not make it effective immediately, the majority presumes, under the guise of the plain language doctrine,
(footnote: 1) that the Legislature intended the officer to give an advisory which, if the defendant, as here, agreed to take the test would make the test inadmissable.  I believe that is an absurd result, a result we seek to avoid in construing statutes. 
Berg v. Berg,
 2000 ND 36, 606 N.W.2d 895. Federal courts have held that when adherence to the plain terms of a statute would lead to an absurd result, the court can look to the intent of Congress and interpret the statute to fulfill that intent and avoid an absurd result. 
DeCoteau v. Sentry Ins. Co.,
 915 F.Supp. 155, 156 (D.N.D. 1996).

[¶47] This Court has said: “Where the language of a statute is clear, certain, and unambiguous, the only duty of the courts is to give effect to the legislative intent expressed therein, 
and, if such statute does not violate some provision of our Constitution, the courts must give effect to the law.”
  
Brenna v. Hjelle
, 161 N.W.2d 356, 359 (N.D. 1968) (emphasis supplied). I believe that portion of the statute which would require a defendant to be advised that the defendant’s refusal to submit to a blood test is a crime violates our Constitution and I would not give it effect.

[¶48] I believe there is still room for common sense in the application of our laws and I would affirm the judgment of the district court affirming the decision of the Department of Transportation suspending Schoon’s driving privileges for two years.

[¶49] Gerald W. VandeWalle, C.J.

Lisa Fair McEvers

FOOTNOTES
1:    
The result of the majority opinion is to set aside the plain language of the statute stating that the law enforcement officer shall determine which of the tests is to be used.  Requiring the officer to give the advisory as it was written would limit the test to a breath test and then only if the officer omitted a reference to a blood test.