VandeWalle, Chief Justice, dissenting.
[¶ 37] Rather than acknowledging an advisory which was legally accurate, the majority instead chooses to require the law enforcement officer to have given an advisory which, if it had been given, the majority, at ¶ 19, recognizes "may well put the State in a position where there is no lawful way to obtain a voluntary, admissible blood test result." I dissent.
[¶ 38] Prior to Schoon's June 2017 arrest, the Supreme Court of the United States announced its decision in Birchfield v. North Dakota . The Supreme Court held unconstitutional the imposition of criminal penalties for refusing to submit to a warrantless blood test. Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2186, 195 L.Ed.2d 560 (2016) (concluding drivers are not deemed to have consented to submit to a blood test on pain of committing a criminal offense). In response to the Birchfield decision, the 65th Legislative Assembly amended N.D.C.C. § 39-20-01(3)(a), which now provides:
The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant .
(Emphasis added).
[¶ 39] Although the amendment was passed in April 2017, it was not effective until August 2017, approximately two months after Schoon was arrested. Regardless of the effective date, I believe the implied consent advisory Deputy Alm read to Schoon was proper.
[¶ 40] Schoon and the majority rely on State v. O'Connor , 2016 ND 72, 877 N.W.2d 312, a pre- Birchfield criminal case, to support his position that the officer's "incomplete" advisory necessitates suppression of the blood test results. In O'Connor , the officer initiated a traffic stop for a defective taillight and discovered the driver (appellant) appeared to be under the influence of alcohol. Id. at ¶ 2. The officer administered field sobriety tests, recited a complete implied consent advisory, and asked the appellant if he would *209 submit to an onsite screening test. Id . The appellant's blood alcohol level was above the presumptive limit and the officer placed him under arrest and drove him to the county jail. Id. at ¶¶ 2-3. Upon arriving at the jail, the officer asked whether the appellant remembered the pre-arrest advisory, but failed to provide a complete post-arrest advisory, thus failing to inform the appellant that refusal to take a chemical test is a crime punishable in the same manner as a DUI. Id. at ¶ 3. Accordingly, the appellant was left without an accurate and complete understanding of his rights and responsibilities under the law. We concluded the results of a chemical test were inadmissible under N.D.C.C. § 39-20-01(3)(b) because the officer failed to provide a complete implied consent advisory to the appellant after he was arrested. Id. at ¶ 14.
[¶ 41] O'Connor is distinguishable from this case. Here, Schoon was given a post-arrest advisory that accurately explained his rights and responsibilities under the law. The omission of language regarding criminal penalties for refusal to submit to a blood test was proper because the Supreme Court had determined that penalty was unconstitutional.
[¶ 42] Schoon argues and the majority agrees that neither the executive branch nor the Department of Transportation have the authority to change or amend the statutorily-mandated implied consent advisory. However, the Supreme Court does have authority to strike down statutory provisions as unconstitutional, as was implicitly done in Birchfield . Birchfield , 136 S.Ct. 2160, 2186 (2016) ; see Heart of Atlanta Motel, Inc. v. United States , 85 S.Ct. 1, 2, 13 L.Ed.2d 12 (1964) (recognizing the Supreme Court's power to declare acts of the legislature unconstitutional has been uniformly recognized since Marbury v. Madison , 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803) ). Additionally, in N.D.C.C. § 1-02-20, our Legislature has created a severability clause which provides:
In the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered.
[¶ 43] Accordingly, the omitted language from the advisory Deputy Alm recited was not an executive overreach. Deputy Alm was complying with the Supreme Court decision that effectively made that part of the advisory unconstitutional. Under these circumstances, the severing of the unconstitutional language from the rest of the statute was proper and still gives full effect to the rest of the advisory.
[¶ 44] Other courts have reached this same conclusion. The purpose of providing an implied consent advisory is to inform the individual of the legal consequences faced if they fail to consent to chemical testing and to ensure their choice is knowing and conscious. See Garlick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing , 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018). The Superior Court of Pennsylvania recently explained:
Following Birchfield , and as the Superior Court concluded thereafter, a licensee cannot be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. Although, at the time Trooper requested that Licensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under *210 Section 3804(c) for refusing a test of his blood, Licensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of Licensee's refusing the requested blood test. Licensee's argument is, in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), [Penn] DOT and the police had to continue to apply Section 1547(b)(2)(ii). However, the effect of Birchfield and the Superior Court cases that followed was to render the criminal penalties warned of in Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the [Motor] Vehicle Code. See 1 Pa. C.S.[A.] § 1925.
Commonwealth v. Robertson , 186 A.3d 440, 445-46 (Pa. Super. Ct. 2018) (citing Garlick , 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018) ).
[¶ 45] After determining a blood test was to be given, as Deputy Alm was directed to do by statute, had he recited the unconstitutional penalty from the advisory he would have been providing Schoon with information that was no longer legally accurate in light of Birchfield . Accordingly, it was proper for Deputy Alm to omit the language. If, of course, the advisory provided by Deputy Alm was not harmonized with the current constitutional and statutory landscape, I would not approve of the omission from the otherwise statutorily-required advisory.
[¶ 46] I do not know why the 2017 Legislature, in amending § 39-20-01(3)(a), did not make it effective immediately by attaching an emergency clause to the bill. The fact remains they recognized the problem and had amended the statute to make it constitutionally firm when this arrest took place. Because they did not make it effective immediately, the majority presumes, under the guise of the plain language doctrine,[1] that the Legislature intended the officer to give an advisory which, if the defendant, as here, agreed to take the test would make the test inadmissable. I believe that is an absurd result, a result we seek to avoid in construing statutes. Berg v. Berg, 2000 ND 36, 606 N.W.2d 895. Federal courts have held that when adherence to the plain terms of a statute would lead to an absurd result, the court can look to the intent of Congress and interpret the statute to fulfill that intent and avoid an absurd result. DeCoteau v. Sentry Ins. Co., 915 F.Supp. 155, 156 (D.N.D. 1996).
[¶ 47] This Court has said: "Where the language of a statute is clear, certain, and unambiguous, the only duty of the courts is to give effect to the legislative intent expressed therein, and, if such statute does not violate some provision of our Constitution, the courts must give effect to the law. " Brenna v. Hjelle , 161 N.W.2d 356, 359 (N.D. 1968) (emphasis supplied). I believe that portion of the statute which would require a defendant to be advised that the defendant's refusal to submit to a blood test is a crime violates our Constitution and I would not give it effect.
[¶ 48] I believe there is still room for common sense in the application of our laws and I would affirm the judgment of the district court affirming the decision of the Department of Transportation suspending Schoon's driving privileges for two years.
[¶ 49] Gerald W. VandeWalle, C.J.
Lisa Fair McEvers

The result of the majority opinion is to set aside the plain language of the statute stating that the law enforcement officer shall determine which of the tests is to be used. Requiring the officer to give the advisory as it was written would limit the test to a breath test and then only if the officer omitted a reference to a blood test.