# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2018 ND 272

City of Grand Forks,                                                     Plaintiff and Appellant

v.

Thomas Arthur Barendt,                                                Defendant and Appellee

No. 20180227

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jay D. Knudson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Sarah W. Gereszek, Grand Forks, ND, for plaintiff and appellant.

Joel F. Arnason (argued) and Kerry S. Rosenquist (on brief), Grand Forks, ND, for defendant and appellee.

**McEvers, Justice.**

[¶1]    The City of Grand Forks appeals a district court order suppressing the results of Thomas Barendt's chemical breath test after the City charged Barendt with actual physical control of a vehicle while under the influence of alcohol.  We affirm, concluding North Dakota's implied consent advisory must be read after placing an individual under arrest and before the administration of a chemical test.

I

[¶2]    According to the facts as agreed to by the parties, in October 2017, while conducting a welfare check in Grand Forks, Officer Luke Wentz observed Barendt slumped over in his vehicle.  After interacting with Barendt, Wentz suspected Barendt may be under the influence of alcohol.  Wentz administered field sobriety tests, and Barendt refused a preliminary breath test.

[¶3]    Wentz informed Barendt of the North Dakota implied consent advisory and Barendt agreed to take a chemical breath test.  Wentz then arrested Barendt for actual physical control of a vehicle while under the influence of alcohol and administered a breath test at the Grand Forks County Correctional Center.  The breath test results showed Barendt's blood alcohol concentration was above 0.08 percent.

[¶4]    In March 2018 before trial, Barendt moved to suppress the results of the chemical breath test because he was not given the implied consent advisory after he was arrested and before Wentz administered the test.  The district court agreed and suppressed Barendt's breath test results.  Relying on *State v. O'Connor*, 2016 ND 72, 877 N.W.2d 312, the court concluded "that the rule of law in North Dakota is that an implied consent advisory must be given *after* an individual has been placed under arrest and *before* the chemical test is administered."

[¶5]    The City argues the district court erred in suppressing the results of Barendt's chemical breath test because Barendt filed his suppression motion after the pretrial motion deadline.

[¶6]    The district court established a January 19, 2018, pretrial motion deadline. Barendt's original trial date was March 13, 2018; however, trial was continued to May 22, 2018, after the City requested a continuance.  The pretrial motion deadline was not extended, and Barendt filed his motion to suppress on March 22, 2018.

[¶7]    Under N.D.R.Crim.P. 12(c)(1), "[t]he court may . . . set a deadline for the parties to make pretrial motions and may also schedule a motion hearing."  "At any time before trial, the court may extend or reset the deadline for pretrial motions." N.D.R.Crim.P. 12(c)(2).  If a party does not meet the deadline established for filing pretrial motions, "the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause."  N.D.R.Crim.P. 12(c)(3).

[¶8]    The parties and the district court acknowledged Barendt's motion was not timely; however, the court considered and granted the motion, explaining:

> [T]he motion in this case pertains to the admissibility of Intoxilyzer test results pursuant to statute.  It is a foundational requirement that the City adhere to the implied consent laws in order to use the test results as evidence. The Court finds that the admissibility of the test results could and would be challenged, in any event, before or even during trial on the matter.  Therefore, the Court is considering and ruling upon the Defendant's motion at this time.

[¶9]    Under N.D.R.Crim.P. 12(c)(3), a district court may consider an untimely motion if the party shows good cause.  Here, the court implicitly found Barendt showed good cause for the untimely motion by finding the admissibility of Barendt's chemical test results could have been challenged at trial.  Although Barendt's motion was untimely, he filed it two months before trial, and the City has not shown it was prejudiced by the court's decision to consider the motion.  We conclude the court did not abuse its discretion by considering Barendt's motion to suppress.

[¶10]   The City argues there is no requirement that an officer must read an individual the implied consent advisory after placing the individual under arrest and before administering a chemical test.  The City argues the results of a chemical test are admissible so long as the reading of the implied consent advisory is contemporaneous to arrest.

[¶11]   Statutory interpretation is a question of law, fully reviewable on appeal. *Zajac v. Traill Cty. Water Res. Dist.*, 2016 ND 134, ¶ 6, 881 N.W.2d 666.  The primary objective in interpreting statutes is to determine legislative intent, as that intent is expressed in the statute's language. *State v. Ngale*, 2018 ND 172, ¶ 10, 914 N.W.2d 495.  Words in a statute are given their plain, ordinary, and commonly understood meaning, unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. "Statutes relating to the same subject matter should be construed together so as to harmonize them if possible." *Broeckel v. Moore*, 498 N.W.2d 170, 172 (N.D. 1993).

[¶12]   The implied consent requirements for chemical testing of a motor vehicle driver to determine alcohol concentration are set forth in N.D.C.C. § 39-20-01.  The statutory directives relating to a law enforcement officer's administration of a chemical test are contained in N.D.C.C. § 39-20-01(2) and (3):

> 2.   The test or tests must be administered at the direction of a law enforcement officer only after placing the individual under arrest and informing that individual that the individual is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof.  For the purposes of this chapter, the taking into custody of a child under section 27-20-13 or an individual under twenty-one years of age satisfies the requirement of an arrest.  The law enforcement officer shall determine which of the tests is to be used.
>
> 3.   a.   The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the

individual's driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant.

    b.    A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.

[¶13] Section 39-20-01(2), N.D.C.C., states a chemical test must be administered "at the direction of a law enforcement officer only after placing the individual under arrest and informing that individual that the individual is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." The officer must then "inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs." N.D.C.C. § 39-20-01(3)(a). The officer must also inform the individual charged of the consequences for refusing a chemical test. *Id.* If the officer fails to inform the individual charged as required under N.D.C.C. § 39-20-01(3)(a), the test results are "not admissible in any criminal or administrative proceeding." N.D.C.C. § 39-20-01(3)(b).

[¶14] Reading together N.D.C.C. § 39-20-01(2) and (3), the "individual charged" in N.D.C.C. § 39-20-01(3) refers to the individual in N.D.C.C. § 39-20-01(2) who is arrested and informed "that the *individual is or will be charged* with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." (Emphasis added.) Because a chemical test must be administered "only after placing the individual under arrest," a plain reading of subdivisions (2) and (3) suggests that the implied consent requirements of N.D.C.C. § 39-20-01(3)(a) relating to refusal of

4

the test must also be read to the individual charged after placing the individual under arrest. Therefore, we conclude that under the plain language of N.D.C.C. § 39-20-01(2) and (3), the legislature intended that an officer read the implied consent advisory to the individual charged after placing the individual under arrest

[¶15] In granting Barendt's motion to suppress his breath test results, the district court relied on *O'Connor*, 2016 ND 72, 877 N.W.2d 312, a case that also involved the interpretation of N.D.C.C. § 39-20-01(3). However, in *O'Connor*, at ¶ 8, we addressed a slightly different issue; specifically, whether an officer's reading of an incomplete implied consent advisory satisfied N.D.C.C. § 39-20-01(3)(a). After placing O'Connor under arrest, the officer failed to inform him that refusal to take a chemical test is a crime punishable in the same manner as driving under the influence. *O'Connor*, at ¶ 3. We held O'Connor's breath test result was inadmissible under N.D.C.C. § 39-20-01(3)(b) because "[t]he officer did not provide O'Connor a complete chemical test implied consent advisory after his arrest and before submission to the Intoxilyzer test." *O'Connor*, at ¶ 14.

[¶16] Although *O'Connor* dealt with a different issue with different facts, the case foreshadowed the result here. *O'Connor* contained statements indicating the implied consent advisory must be read to an individual after arrest and before administration of a chemical test. *See, e.g., O'Connor*, 2016 ND 72, ¶¶ 11, 13, 877 N.W.2d 312 (stating that permitting an implied consent advisory given before an arrest to satisfy the statutory requirement to advise for the chemical test is wholly incompatible with the statute's language; and further stating "The Legislature has directed that a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a criminal or administrative proceeding.").

[¶17] We conclude the implied consent advisory under N.D.C.C. § 39-20-01(3) must be read after placing an individual under arrest and before administering a chemical test to determine alcohol concentration or the presence of other drugs. The district court properly granted Barendt's motion to suppress.

5

## IV

[¶18]   The suppression order is affirmed.

[¶19]   Lisa Fair McEvers
         Daniel J. Crothers
         Jerod E. Tufte
         Jon J. Jensen
         Gerald W. VandeWalle, C.J.