Tufte, Justice.
[¶ 1] Tre Thomas Schoon appealed from a district court judgment affirming a Department of Transportation decision suspending his driving privileges for two years. Schoon argues that because he was given an incomplete implied consent advisory, evidence of his blood test results was inadmissible under N.D.C.C. § 39-20-01(3)(b). We reverse.
I
[¶ 2] In June 2017, Deputy Jeremy Alm was on patrol in Burleigh County when he observed a vehicle that appeared to be speeding. Deputy Alm initiated a traffic stop and made contact with the driver, later identified as Schoon. Deputy Alm smelled the odor of marijuana coming from the vehicle and asked Schoon to exit the *201 vehicle. Deputy Alm noticed an odor of alcohol coming from Schoon's breath and observed that Schoon appeared to have bloodshot, watery eyes. Schoon admitted to having drunk two or three beers. Schoon consented to a search of his vehicle, which revealed two open cans of beer, one full can of beer, and several empty beer cans in the box of his pickup. Schoon agreed to perform field sobriety tests, including the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Relying on the field test results, Deputy Alm read the North Dakota implied consent advisory and asked Schoon to take a preliminary breath test. Schoon consented to the breath test. The test result was higher than the presumptive limit. Deputy Alm placed Schoon under arrest for driving under the influence, and read Schoon Miranda rights and an implied consent advisory. The advisory provided:
As a condition of operating a motor vehicle on a highway, or on a public or private area, to which the public has [a] right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs. I must inform you that ... North Dakota law requires you to submit to a chemical test to determine whether you are under the influence of alcohol. Refusal to take the test as directed by a law enforcement officer may result in a revocation of your driver's license for a minimum of 180 days and potentially up to three years. Do you understand these consequences? Do you consent to take the test that I am requesting?
[¶ 3] Deputy Alm then asked Schoon if he would be willing to provide a blood sample. Schoon consented.
[¶ 4] An administrative hearing was held. Schoon moved to suppress the blood test results because of Deputy Alm's failure to recite the part of the statutory advisory stating that refusal to consent to a blood test is a crime punishable in the same manner as driving under the influence. At the hearing, Deputy Alm explained that if an individual refuses the blood test, he then asks for a chemical breath test. If the driver refuses the breath test, then Alm reads the section of the statutory advisory explaining that refusal is punishable in the same manner as DUI. Deputy Alm testified he did not read the part of the implied consent advisory indicating that refusal is a crime punishable in the same manner as DUI, because Schoon consented to the initial request for a chemical blood test.
[¶ 5] The hearing officer's written decision denied Schoon's motion to exclude the evidence of the blood test, concluding:
Deputy Alm recited an implied consent advisory that accurately stated the consequences of a refusal. The advisory provided by Deputy Alm to Mr. Schoon satisfied the requirements of 39-20-01, subsection 3a in light of the holding in Birchfield , and therefore, the test results are admissible under subsection 3b. NDCC 39-20-01.
Schoon requested judicial review, and the district court affirmed the hearing officer's decision that Deputy Alm's reading of the implied consent advisory fulfilled the requirements of N.D.C.C. § 39-20-01(3) and the blood sample was properly obtained.
II
[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs this Court's review of the Department of Transportation's administrative decision to suspend or revoke a driver's license. McCoy v. N.D. Dep't of Transp. , 2014 ND 119, ¶ 6, 848 N.W.2d 659. Under N.D.C.C. § 28-32-46, this Court must affirm the agency's decision unless:
*202 1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.
[¶ 7] This Court has explained:
When reviewing an administrative agency's decision, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. This Court does not make independent findings or substitute its judgment. Once the facts are established, their significance presents a question of law, which we review de novo. Our standard of review for a claimed violation of a constitutional right is de novo.
McCoy , 2014 ND 119, ¶ 8, 848 N.W.2d 659 (citations and internal quotations omitted).
III
[¶ 8] Schoon argues the chemical test results are inadmissible under N.D.C.C. § 39-20-01(3)(b) because the implied consent advisory read by Deputy Alm was not the complete advisory set out in subdivision 3(a). The Administrative Hearing Officer determined the test results were admissible, despite the failure to provide Schoon with the complete implied consent advisory, and subsequently revoked Schoon's driving privileges for a period of two years. Schoon has requested that this Court determine whether the chemical test result was admissible. We conclude the test result was not admissible.
[¶ 9] Upon placing an individual under arrest for driving under the influence of alcohol or drugs or being in actual physical control of a vehicle while under the influence of alcohol or drugs, an officer may request the individual submit to a chemical test of the individual's blood, breath, or urine. N.D.C.C. § 39-20-01. "The law enforcement officer shall determine which of the tests is to be used." N.D.C.C. § 39-20-01(2). The admissibility of test results is governed by detailed statutory requirements. Under N.D.C.C. § 39-20-01(3)(b), a chemical test administered to determine alcohol concentration is not admissible in an administrative proceeding if the law enforcement officer fails to inform the individual charged as required under § 39-20-01(3)(a).
[¶ 10] At the time Schoon was arrested and at the time of the hearing when the test result was offered into evidence, N.D.C.C. § 39-20-01(3) provided:
a. The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by *203 the law enforcement officer is a crime punishable in the same manner as driving under the influence ; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.
b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.
(Emphasis added.)
[¶ 11] The State asks us to limit application of this admissibility statute where a blood test is required because during the period after Birchfield was decided on June 23, 2016, and before the effective date of the amendment on August 1, 2017, it was impractical if not impossible for an officer to request consent for a blood test and have the result admitted into evidence unless a warrant was obtained. Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). As discussed below, Birchfield did not abrogate the admissibility requirements of N.D.C.C. § 39-20-01(3).
[¶ 12] Our analysis begins with N.D.C.C. § 39-20-01(3)(b). As we explained in State v. O'Connor , 2016 ND 72, 877 N.W.2d 312, this provision sets out clear and specific instructions for exactly what information must be communicated to a driver who is arrested for driving under the influence. Subdivision (b) strictly requires communicating all the information required by subdivision (a) before a test result is admissible. O'Connor, at ¶¶ 8, 11 (applying same version of § 39-20-01(3) at issue here). Considering only the statute as explained by O'Connor , the advisory was incomplete and thus inadmissible under subdivision (b).
[¶ 13] We must then consider whether, as the State argues, N.D.C.C. § 39-20-01(3) has been implicitly abrogated by the Birchfield decision. In the three consolidated cases in Birchfield , the U.S. Supreme Court reached different conclusions under the criminal refusal statutes at issue depending on whether a blood or breath test was requested.
[¶ 14] As to blood tests, the Court concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield , 136 S.Ct. at 2186. The Court went on to hold that refusal of a warrantless blood test may not be the subject of a criminal penalty:
There is no indication in the record or briefing that a breath test would have failed to satisfy the State's interests in acquiring evidence to enforce its drunk-driving laws against Birchfield. And North Dakota has not presented any case-specific information to suggest that the exigent circumstances exception would have justified a warrantless search. Unable to see any other basis on which to justify a warrantless test of Birchfield's blood, we conclude that Birchfield was threatened with an unlawful search and that the judgment affirming his conviction must be reversed.
Id. (citations omitted).
[¶ 15] In Beylund , a separate case consolidated with Birchfield , the driver submitted to a requested chemical blood test. Id. at 2172. The Supreme Court remanded that case "to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory." Id. at 2186. Birchfield did not expressly declare unconstitutional part of *204 North Dakota's implied consent advisory. Only the reference to "blood" in the criminal refusal statute is clearly declared to be facially invalid by Birchfield . Id. (holding "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense"); N.D.C.C. § 39-08-01(1)(e) (punishing an individual's refusal of a "chemical test, or tests, of the individual's blood, breath, or urine"). If the U.S. Supreme Court intended to declare facially invalid the advisory given to Birchfield and Beylund, it made little sense to remand in Beylund .
[¶ 16] The State argues Birchfield implicitly required removal of any reference to criminal penalties for refusal from the statutory advisory to avoid an unconstitutional application of the implied consent law. We narrowly construe decisions declaring statutes unconstitutional, limiting their effect to provisions directly at issue. See N.D.C.C. § 1-02-20. If the claim is a facial challenge, we examine whether a statute has both constitutional and unconstitutional applications. Ordinarily, facial invalidation is unnecessary when the court can enjoin only the unconstitutional applications. Ayotte v. Planned Parenthood , 546 U.S. 320, 329-331, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (stating that "we restrain ourselves from rewriting state law to conform it to constitutional requirements even as we strive to salvage it") (internal quotation omitted).
[¶ 17] The advisory in effect at the time of Schoon's arrest and hearing required no mention of blood or breath, only of a "chemical test," which could be either test. N.D.C.C. § 39-20-01(3)(a) (2015). Thus, there was no facially unconstitutional language in the advisory. The State concedes the advisory had constitutional application to breath tests and was not facially unconstitutional following Birchfield . As a result of Birchfield , when this statutory advisory was in effect and an officer requested a blood test, the advisory was misleading insofar as refusal of "any chemical test" (emphasis added) was no longer a crime punishable in the same manner as DUI. But, where an officer requested a breath test, the advisory was accurate and not misleading. Because the advisory statute has constitutional application to breath tests, we conclude Birchfield did not implicitly hold that § 39-20-01(3)(a) was unconstitutional.
[¶ 18] We must next consider whether the constitutional holding in Birchfield supports a challenge to the subdivision 3(a) advisory or the subdivision 3(b) admissibility requirement as applied to requests for blood tests. We are not presented with a traditional as-applied constitutional claim here. The driver asserts no violation of his constitutional rights. Instead, the State argues, and the hearing officer and district court agreed, that to avoid an unconstitutional application of the advisory following Birchfield , an officer may omit a portion of an otherwise mandatory advisory without incurring the statutory penalty of inadmissibility. The State asks us to conclude that reading the advisory to a driver prior to requesting a blood test is itself unconstitutional under Birchfield . But as the State concedes, the exact same advisory is constitutional when a breath test is requested.
[¶ 19] Inaccurate advice as to consequences resulting from refusal of a blood test may inform whether there was voluntary consent, but the inaccurate advisory is not itself a constitutional violation under Birchfield . 136 S.Ct. at 2186 (remanding Beylund "to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory"). After Birchfield , a reading of the 2015 advisory language (and only that advisory language without further explanation *205 about the effect of Birchfield ) would make it extremely difficult for the State to also establish voluntary consent. That § 39-20-01(3)(a) requires an officer to warn of criminal charges, some of which are proscribed by Birchfield , on pain of inadmissibility under 3(b), may well put the State in a position where there is no lawful way to obtain a voluntary, admissible blood test result. However, Birchfield expressly preserved such evidentiary consequences:
Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them .
Birchfield , 136 S.Ct. at 2185 (citations omitted) (emphasis added).
[¶ 20] The legislature, in crafting a statute that is clear and specific about the advisory officers must give, had an unintended effect in the wake of Birchfield . The advisory was accurate when enacted as to all chemical tests, and remained accurate post- Birchfield where a breath test would be requested. Yet the admissibility requirement in § 39-20-01(3)(b) was not conditioned on an accurate advisory or a driver's obtaining an understanding of the consequences of the choices available. Section 39-20-01(3)(b) simply conditions admissibility on whether the officer informed the driver of the contents of (3)(a).
[¶ 21] Following Birchfield , there was every reason for the State to amend this statute at the earliest opportunity. It was amended during the next legislative session, but relatively late in the session and without an emergency clause, which would have given it immediate effect. In essence, what the State asks of this Court is to amend the statute under the guise of interpreting Birchfield , reaching the same substantive result as the 2017 legislative amendment. Our authority to declare a statute's constitutionality does not permit that result here.
[¶ 22] By asking us to reinterpret the plain meaning of the admissibility requirement, the State seeks elimination of a barrier to admitting evidence critical to meet the State's burden. We are aware of no other case in which the State has similarly persuaded a court to void on constitutional grounds a barrier to admissibility of evidence to be used in support of the State's case. It is for a driver or defendant to claim a statute, although valid in some circumstances, is unconstitutional as applied to his facts. Schoon did not challenge the statute's constitutionality at all, let alone as applied to him.
[¶ 23] The State implicitly asks for an unusual reading of the Fourteenth Amendment in its "as applied" challenge. The Fourth Amendment analysis in Birchfield applies to the states through the Fourteenth Amendment, which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14 § 1 (emphasis added). The Fourth Amendment, as incorporated through the Fourteenth, is a shield against state action. We reject the argument that the State may deploy the Fourteenth Amendment as a sword to cut away inconvenient barriers to admitting its own evidence.
[¶ 24] We do not declare any part of N.D.C.C. § 39-20-01(3) to be facially unconstitutional as a result of Birchfield . Because Schoon did not challenge the constitutionality of the statutes as applied to him, and because the State is not permitted *206 to omit part of the statutory advisory to avoid a potential as-applied challenge, the admissibility statute must be applied as written.
IV
[¶ 25] We reverse the district court's judgment and the hearing officer's decision to suspend Schoon's driving privileges for two years. We order the Department to reinstate Schoon's driving privileges.
[¶ 26] Jerod E. Tufte
Daniel J. Crothers
Jon J. Jensen