Filed 9/25/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 216

State of North Dakota, Plaintiff and Appellee

v.

Daniel Bohe, Defendant and Appellant

No. 20170456

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable James S. Hill, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Austin Gunderson, Mandan, N.D., for plaintiff and appellee.

James R. Loraas, Bismarck, N.D., for defendant and appellant.

State v. Bohe

No. 20170456

Tufte, Justice.

[¶1] Daniel Bohe appealed from a criminal judgment entered after his conditional plea of guilty to a charge of driving with a blood alcohol concentration of .08 or greater in violation of N.D.C.C. § 39-08-01. Bohe argues that because he was given an incomplete implied consent advisory, the district court erred by failing to suppress evidence of blood test results under N.D.C.C. § 39-20-01(3)(b). We reverse the judgment and the district court’s order denying Bohe’s motion to suppress the blood test evidence.

I

[¶2] On December 3, 2016, the North Dakota National Guard set up a checkpoint in Morton County to “maintain peace and order, and to limit hardships and impacts caused by the [Dakota Access Pipeline Protest] emergency.” Daniel Bohe drove up to the roadblock and stopped. After speaking with Bohe, a National Guard service member informed Deputy Josh Lloyd, who was parked behind the checkpoint, that Bohe appeared to be under the influence of alcohol.

[¶3] Upon approaching Bohe’s vehicle, Deputy Lloyd testified he could smell a faint odor of alcohol emitting from Bohe’s breath. Bohe’s speech was slurred, and he admitted to having consumed three alcoholic beverages. Deputy Lloyd then asked Bohe to come back to the patrol vehicle with him. Deputy Lloyd noted Bohe was slightly unsteady on his feet as he walked back to the patrol vehicle.

[¶4] Once seated in the patrol vehicle, Bohe indicated he had consumed four beers. Deputy Lloyd then conducted the HGN, the alphabet, and the counting backwards tests. Bohe failed each test. Deputy Lloyd did not request the walk-and-turn or the one-leg stand because Bohe stated he had bad knees and because the weather had left the ground unsuitable for those tests. Deputy Lloyd testified he read Bohe the implied consent advisory prior to the preliminary breath test and Bohe appeared to understand the advisory. The preliminary breath test resulted in a blood alcohol concentration above the legal limit. Deputy Lloyd then arrested Bohe for driving under the influence.

[¶5] After arresting him, Deputy Lloyd testified he read Bohe the implied consent advisory and placed him in the back seat of the patrol vehicle. Deputy Lloyd requested a blood test. Bohe consented. The request was repeated about ten miles from the jail to confirm Bohe’s willingness to take the blood draw. Bohe again indicated he would take the test. A registered nurse drew Bohe’s blood within two hours of the observed driving time.

[¶6] At the March 27, 2017, suppression hearing, Bohe asked Deputy Lloyd on cross-examination if he was sure he had read the implied consent advisory twice. Deputy Lloyd answered, “No. I can’t be sure I did.” On re-examination, the State asked if he had read the part of the advisory that stated a refusal to take the blood test was a crime punishable in the same manner as driving under the influence. Deputy Lloyd testified he was recently told not to read that part of the advisory but was not sure when he received those instructions.

[¶7] Deputy Lloyd stated he read the implied consent advisory again, the same way he read it the first time except that he was asking for the chemical test rather than onsite screening. The State again asked if he read the part about refusal being a crime punishable in the same manner as driving under the influence. Deputy Lloyd stated, “I believe I would have left that out.” Deputy Lloyd did not name 
Birchfield v. North Dakota
, 136 S. Ct. 2160 (2016), but he said he would have left out that portion because of a recent case. Considering the uncertainty in this testimony, the district court summarized: “the Court observes that Deputy Lloyd clearly testified that he knew there was a reason that portion of the advisory should be left out, and, on that basis, he believed he left it out. The court finds that testimony credible.”

II

[¶8] Bohe argues the chemical test results are inadmissible under N.D.C.C. § 39-

20-01(3)(b) because the implied consent advisory read by Deputy Lloyd was not the complete advisory set out in subdivision 3(a). The district court denied Bohe’s motion to suppress and determined the test results were admissible despite its finding that Deputy Lloyd failed to provide Bohe with the complete implied consent advisory. We considered a materially indistinguishable application of N.D.C.C. § 39-

20-01(3) in 
Schoon v. N.D. Dep’t of Transp.
, 2018 ND 210. Although this is an appeal from a criminal judgment rather than an administrative appeal, the statute applies the same admissibility test to criminal and administrative proceedings, and thus the blood test result was inadmissible and should have been excluded by the district court.

[¶9] In our review of a district court’s decision on a motion to suppress,

we defer to the district court’s findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court’s decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court’s opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

State v. Hawkins
, 2017 ND 172, ¶ 6, 898 N.W.2d 446 (quoting 
State v. Odom
, 2006 ND 209, ¶ 8, 722 N.W.2d 370).

[¶10] Under N.D.C.C. § 39-20-01, when individuals are placed under arrest for driving under the influence of either alcohol or drugs, an officer is permitted to request the individuals submit to a chemical test of their blood, breath, or urine. N.D.C.C. § 39-20-01;
 Schoon
, 2018 ND 210, ¶ 9. The officer shall determine which of the three tests to use. N.D.C.C. § 39-20-01(2). The test result’s admissibility is governed by N.D.C.C. § 39-20-01(3)(b), under which a “chemical test administered to determine alcohol concentration is not admissible in an administrative proceeding if the law enforcement officer fails to inform the individual charged as required under § 39-20-01(3)(a).” 
Schoon,
 at ¶ 9.

[¶11] At the time of Bohe’s arrest and through the denial of his motion to suppress, N.D.C.C. § 39-20-01(3) read:

a. The 
law enforcement officer shall inform the individual charged
 that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; 
that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence
; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual’s driving privileges.

b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.

(Emphasis added.)

[¶12] The State argues that under 
Birchfield
, 136 S. Ct. 2160
,
 the omission of criminal penalties from the advisory was required and thus the district court properly admitted the blood test result. As we explained in 
Schoon
, 
Birchfield 
did not abrogate the admissibility requirements in N.D.C.C. § 39-20-01(3). 
Schoon,
 2018 ND 210, ¶¶ 11, 13-17.

[¶13] “The Legislature has directed that a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a criminal or administrative proceeding.” 
State v. O’Connor
, 2016 ND 72, ¶ 13, 877 N.W.2d 312. For chemical test results to be admissible, N.D.C.C. § 39-20-01(3)(b) requires all of the information in subsection (a) to be communicated. 
O’Connor
, at ¶¶ 8, 11 (applying the same 2015 revision of N.D.C.C. § 39-20-01(3) at issue here).

[¶14] The dissent, at ¶ 26, would invoke the broad legislative objective of preventing driving under the influence as a justification for this Court to reinterpret the statutory means in view of how well the enacted means achieve the desired ends. The desired ends of legislation may in some cases inform our interpretation of the words and phrases enacted into law as a means to those ends. But we cannot give effect to unenacted intention. N.D.C.C. § 1-02-05. No statute can perfectly anticipate every scenario. In pursuing the ends of highway safety, the means chosen by the Legislative Assembly may be underinclusive, overinclusive, or both. It is for the Legislative Assembly alone to amend a statute through legislation rather than litigation when its carefully crafted statutory means fail to achieve its desired ends. 
N.D. Legislative Assembly v. Burgum
, 2018 ND 189, ¶ 73, 916 N.W.2d 83; 
County of Stutsman v. State Historical Soc.
, 371 N.W.2d 321, 330 (N.D. 1985) (holding that a government entity may not successfully assert a violation of federal constitutional rights “because it is not a person or private party”).

[¶15] The dissent, at ¶ 30, would rely on the presumption that when the Legislative Assembly enacts a statute, “[c]ompliance with the constitutions of the state and of the United States is intended.” N.D.C.C. § 1-02-38(1). In January 2015, this Court unanimously rejected a Fourth Amendment challenge to a statute imposing a criminal penalty for refusal of a warrantless blood test against Fourth Amendment challenge. 
State v. Birchfield
, 2015 ND 6, 858 N.W.2d 302. The version of § 39-20-01 at issue here became effective on April 15, 2015. The U.S. Supreme Court granted certiorari in December, and in June, 2016, reversed our decision in 
Birchfield v. North Dakota
, 136 S. Ct. 2160 (2016). A presumed intent to comply with constitutional limitations when § 39-20-01 was enacted would be in reference to the Fourth Amendment as explained by the courts up to that point. The standard by which the Assembly presumably legislated between January and April 2015 was the then-recent decision of this Court upholding criminal penalties for refusal of warrantless blood tests, along with the associated implied consent and admissibility standards. The later reversal of our decision by the U.S. Supreme Court could not retroactively alter the legislative intent or the proper interpretation of the enacted law expressing that intent. The Legislative Assembly fixes its intent in the words it enacts into law. Neither the canon of constitutional avoidance nor the § 1-02-38 presumption of constitutional compliance presumes the Legislative Assembly legislated to avoid constitutional decisions that were not yet announced.  See 
Lowe v. SEC
, 472 U.S. 181, 227 (White, J., concurring) (criticizing constitutional avoidance analysis relying on assumption that Congress had the “ability to predict our constitutional holdings 45 years in advance”).

[¶16] Because 
Birchfield 
did not abrogate the requirements of N.D.C.C. § 39-20-

01(3), 
Schoon
, 2018 ND 210, ¶¶ 18-24, our decision in 
O’Connor
 requires the driver be informed of the entire statutory warning. We defer to the district court’s finding that Deputy Lloyd did not provide the entire warning, and conclude that the blood test is inadmissible as a result. The motion to suppress the blood test result should have been granted.

[¶17] Bohe also argues that his consent was coerced and the obtaining of his blood was an unlawful search. We need not address those arguments here as they are unnecessary to the decision.

III

[¶18] We reverse the criminal judgment and the district court’s order denying Bohe’s motion to suppress the blood test evidence.

[¶19] Jerod E. Tufte

Jon J. Jensen

Crothers, Justice, specially concurring.

[¶20] I specially concur in this case on the same grounds I articulated in
 Schoon v. N.D. Dep’t of Transp.
, 2018 ND 210.

[¶21] Daniel J. Crothers

Jon J. Jensen

McEvers, Justice, dissenting.

[¶22] I respectfully dissent.

[¶23] In December 2016, N.D.C.C. § 39-20-01(3)(a) stated in pertinent part:

The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer 
is
 a crime punishable in the same manner as driving under the influence.

(Emphasis added.)  Section 39-20-01(3)(b), N.D.C.C., stated “[a] test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.”

[¶24] Prior to Bohe’s arrest, the Supreme Court of the United States held “motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.”  
Birchfield v. North Dakota
, 136 S.Ct. 2160, 2186 (2016).  If the test requested is blood, reading the portion of the advisory stating “that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence” is inaccurate, and prosecuting for refusal of a blood test after reading such an advisory would be unconstitutional under 
Birchfield
.  
Id.
 at 2186 (noting partial inaccuracy of North Dakota’s advisory).  At the time Bohe was stopped it would have been unlawful to prosecute him for refusal to submit to a warrantless blood test without first obtaining a search warrant.  Since his stop, this Court has also held it unlawful to prosecute for refusal of a warrantless urine test.  
State v. Helm
, 2017 ND 207, ¶ 16, 901 N.W.2d 57.

[¶25] The question is whether Deputy Lloyd should have read the entire advisory which, as applied to a blood test, would have been inaccurate or whether he should have read the advisory excluding the provision to give an accurate advisory for the type of test he intended to be used.  In other words, must he read an inaccurate advisory to comply with N.D.C.C. § 39-20-01(3)(b).  The majority relies on 
State v. O’Connor
, where an officer recited a complete implied consent advisory prior to the onsite screening test but only read the defendant a partial implied consent advisory prior to the chemical test, which failed to inform him that refusal to take a chemical test is a crime punishable in the same manner as driving under the influence.  2016 ND 72, ¶¶ 2-3, 877 N.W.2d 312.  This Court held the breath test was inadmissible because the officer did not provide a complete implied consent advisory and affirmed the district court’s order granting the motion to suppress.  
Id.
 at ¶¶ 14-15.  
O’Connor
 is distinguishable from this case.  
O’Connor 
occurred prior to 
Birchfield
, and there was no lawful reason for the officer to deviate from the required implied consent advisory.  Here, the officer deviated from the complete implied consent advisory to avoid giving Bohe an inaccurate advisory; one that may have led to an unconstitutional result under 
Birchfield
 when it involved administration of a blood test.

[¶26] This Court has stated:

The clear legislative intent in enacting chapter 39-20, N.D.C.C., was for the protection of the public, 
i.e.
, to prevent individuals from driving while under the influence of intoxicants.  
Williams v. North Dakota State Highway Comm’r
, 417 N.W.2d 359, 360 (N.D. 1987); 
Asbridge v. North Dakota State Highway Comm’r
, 291 N.W.2d 739, 750 (N.D. 1980).  Section 39-20-03.1, N.D.C.C., was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive.  It would be an absurd result if we were to hold that an officer’s failure to strictly comply with this portion of the statute had the opposite effect.  While it is clear that section 39-20-03.1, N.D.C.C., requires the officer to forward the operator’s license, the failure to do so does not destroy the Director’s jurisdiction to suspend a violator’s driving privileges.  A contrary holding would defeat the Legislature’s intent to protect the public from potential hazards posed by intoxicated drivers.

Schwind v. N.D. Dep’t of Transp.
, 462 N.W.2d 147, 150 (N.D. 1990).  “When adherence to the letter of the law would cause an absurd result, we give effect to the legislative intent even though contrary to the letter of the law.”  
Samdahl v. N.D. Dep’t of Transp.
, 518 N.W.2d 714, 717 (N.D. 1994).

[¶27] The purpose of providing an implied consent advisory is to inform the driver of the consequences of refusing a chemical test.  
See Hearing on S.B. 2052 Before the Senate Judiciary Comm.
, 64th N.D. Legis. Sess. (Jan. 20, 2015) (testimony of Glenn Jackson, Director, Driver’s Licence Division, North Dakota Dep’t of Transp.); 
see also Garlick v. Commonwealth, Dep’t of Transp., Bureau of Drivers Licensing,
 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018).  The Commonwealth of Pennsylvania recently addressed this issue with a similar advisory.  In 
Commonwealth v. Robertson
, 186 A.3d 440 (Pa. Super. Ct. 2018), the Superior Court of Pennsylvania explained that following 
Birchfield,
 a licensee cannot be criminally punished for refusing a police officer’s request for a blood test under Pennsylvania’s implied consent law and therefore held the criminal penalties warned of for blood testing were unenforceable and were to be severed from the advisory.  
Robertson
, at 446.  While it is acknowledged that Pennsylvania does not have an identical advisory, the theory remains the same.  Here, the effect of the 
Birchfield
 case should render the criminal penalties for refusing a blood test unenforceable and should effectively sever that portion of the advisory to correctly inform the driver of the consequences of refusing a chemical test.

[¶28] In 
Schoon v. N.D. Dep’t of Transp.
, a case involving an administrative appeal of a driver’s license suspension, the majority stated:  “After 
Birchfield
, a reading of the 2015 advisory language (and only that advisory language without further explanation about the effect of 
Birchfield)
 would make it extremely difficult for the State to also establish voluntary consent.”  2018 ND 210, ¶ 19.  The majority in 
Schoon
 likewise conceded that following N.D.C.C. § 39-20-01(3)(a) which, if interpreted as the majority has, requires an officer to warn of a criminal charge under section 3(b), which is proscribed by 
Birchfield,
 may put the State in a position where there is no lawful way to obtain a voluntary admissible blood test.  
Schoon
, at ¶ 19.  Such is likely the case here, because Deputy Lloyd was not trained to administer the chemical breath test and therefore could only request a blood test.

[¶29] The majority’s application notes that N.D.C.C. § 39-20-01(2) specifically provides:  “[t]he law enforcement officer shall determine which of the tests is to be used.”  
Schoon
, 2018 ND 210, ¶ 9.  As interpreted by the majority, under N.D.C.C. § 39-20-01(3)(a) and (b), the only choice Deputy Lloyd had was to offer an Intoxilyzer breath test he was not trained to administer.  Presumably, the choice provided in N.D.C.C. § 39-20-01(2) is to allow for differences in training or availability of certified testing devices.  A law enforcement officer not trained to administer a chemical breath test is caught in a “catch 22” situation:  either read the advisory omitting the sanction for blood tests or read the advisory in full and risk not being able to use a blood draw given by consent.

[¶30] When construing a statute under the rules of statutory construction it is presumed that when enacting a statute, compliance with the constitution of the state and of the United States is intended.  N.D.C.C. § 1-02-38(1).  Is it also presumed that a result feasible of execution is intended.  N.D.C.C. § 1-02-38(4).  I have no doubt the legislature when enacting N.D.C.C. § 39-20-01(3)(a) and (b) intended to comply with that construction and that it would be feasible for law enforcement to give an advisory that accurately portrays the law.  It does not follow an officer should read an implied consent advisory he knows is inaccurate and may be unconstitutional as applied.  It also does not follow that the legislature would require strict adherence to a statute when it is not feasible for law enforcement to follow it.

[¶31] The legislature has provided the following rule of statutory construction:

In the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered.

N.D.C.C. § 1-02-20.

[¶32] Here, I cannot conclude the legislature’s intent would require a verbatim reading of the statute, thereby misinforming the driver of the law by warning him of the criminal penalties for refusing a blood test, which would be unconstitutional as applied.  A statute must be construed to avoid absurd results.  Given the facts of this case, requiring an officer to misinform the driver of criminal penalties that would not apply, or offer a test he is not trained to administer, is an absurd result.  I conclude the deputy gave a constitutionally accurate advisory by not reading the portion of the statute advising the consequences of refusal of a blood test.

[¶33] I would affirm the district court’s criminal judgment.

[¶34] Lisa Fair McEvers

Gerald W. VandeWalle, C.J.