Tufte, Justice.
[¶ 1] Daniel Bohe appealed from a criminal judgment entered after his conditional plea of guilty to a charge of driving with a blood alcohol concentration of .08 or greater in violation of N.D.C.C. § 39-08-01. Bohe argues that because he was given an incomplete implied consent advisory, the district court erred by failing to suppress evidence of blood test results under N.D.C.C. § 39-20-01(3)(b). We reverse the judgment and the district court's order denying Bohe's motion to suppress the blood test evidence.
I
[¶ 2] On December 3, 2016, the North Dakota National Guard set up a checkpoint in Morton County to "maintain peace and order, and to limit hardships and impacts caused by the [Dakota Access Pipeline Protest] emergency." Daniel Bohe drove up to the roadblock and stopped. After speaking with Bohe, a National Guard service member informed Deputy Josh Lloyd, who was parked behind the checkpoint, that Bohe appeared to be under the influence of alcohol.
[¶ 3] Upon approaching Bohe's vehicle, Deputy Lloyd testified he could smell a faint odor of alcohol emitting from Bohe's breath. Bohe's speech was slurred, and he admitted to having consumed three alcoholic beverages. Deputy Lloyd then asked Bohe to come back to the patrol vehicle with him. Deputy Lloyd noted Bohe was slightly unsteady on his feet as he walked back to the patrol vehicle.
[¶ 4] Once seated in the patrol vehicle, Bohe indicated he had consumed four beers. Deputy Lloyd then conducted the HGN, the alphabet, and the counting backwards tests. Bohe failed each test. Deputy Lloyd did not request the walk-and-turn or the one-leg stand because Bohe stated he had bad knees and because the weather had left the ground unsuitable for those tests. Deputy Lloyd testified he read Bohe the implied consent advisory prior to the preliminary breath test and Bohe appeared to understand the advisory. The preliminary breath test resulted in a blood alcohol concentration above the legal limit.
*499 Deputy Lloyd then arrested Bohe for driving under the influence.
[¶ 5] After arresting him, Deputy Lloyd testified he read Bohe the implied consent advisory and placed him in the back seat of the patrol vehicle. Deputy Lloyd requested a blood test. Bohe consented. The request was repeated about ten miles from the jail to confirm Bohe's willingness to take the blood draw. Bohe again indicated he would take the test. A registered nurse drew Bohe's blood within two hours of the observed driving time.
[¶ 6] At the March 27, 2017, suppression hearing, Bohe asked Deputy Lloyd on cross-examination if he was sure he had read the implied consent advisory twice. Deputy Lloyd answered, "No. I can't be sure I did." On re-examination, the State asked if he had read the part of the advisory that stated a refusal to take the blood test was a crime punishable in the same manner as driving under the influence. Deputy Lloyd testified he was recently told not to read that part of the advisory but was not sure when he received those instructions.
[¶ 7] Deputy Lloyd stated he read the implied consent advisory again, the same way he read it the first time except that he was asking for the chemical test rather than onsite screening. The State again asked if he read the part about refusal being a crime punishable in the same manner as driving under the influence. Deputy Lloyd stated, "I believe I would have left that out." Deputy Lloyd did not name Birchfield v. North Dakota , --- U.S. ----, 136 S. Ct. 2160, 195 L.Ed.2d 560 (2016), but he said he would have left out that portion because of a recent case. Considering the uncertainty in this testimony, the district court summarized: "the Court observes that Deputy Lloyd clearly testified that he knew there was a reason that portion of the advisory should be left out, and, on that basis, he believed he left it out. The court finds that testimony credible."
II
[¶ 8] Bohe argues the chemical test results are inadmissible under N.D.C.C. § 39-20-01(3)(b) because the implied consent advisory read by Deputy Lloyd was not the complete advisory set out in subdivision 3(a). The district court denied Bohe's motion to suppress and determined the test results were admissible despite its finding that Deputy Lloyd failed to provide Bohe with the complete implied consent advisory. We considered a materially indistinguishable application of N.D.C.C. § 39-20-01(3) in Schoon v. N.D. Dep't of Transp. , 2018 ND 210, 917 N.W.2d 199. Although this is an appeal from a criminal judgment rather than an administrative appeal, the statute applies the same admissibility test to criminal and administrative proceedings, and thus the blood test result was inadmissible and should have been excluded by the district court.
[¶ 9] In our review of a district court's decision on a motion to suppress,
we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.
*500 State v. Hawkins , 2017 ND 172, ¶ 6, 898 N.W.2d 446 (quoting State v. Odom , 2006 ND 209, ¶ 8, 722 N.W.2d 370 ).
[¶ 10] Under N.D.C.C. § 39-20-01, when individuals are placed under arrest for driving under the influence of either alcohol or drugs, an officer is permitted to request the individuals submit to a chemical test of their blood, breath, or urine. N.D.C.C. § 39-20-01 ; Schoon , 2018 ND 210, ¶ 9, 917 N.W.2d 199. The officer shall determine which of the three tests to use. N.D.C.C. § 39-20-01(2). The test result's admissibility is governed by N.D.C.C. § 39-20-01(3)(b), under which a "chemical test administered to determine alcohol concentration is not admissible in an administrative proceeding if the law enforcement officer fails to inform the individual charged as required under § 39-20-01(3)(a)." Schoon, at ¶ 9.
[¶ 11] At the time of Bohe's arrest and through the denial of his motion to suppress, N.D.C.C. § 39-20-01(3) read:
a. The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence ; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.
b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.
(Emphasis added.)
[¶ 12] The State argues that under Birchfield , 136 S.Ct. 2160, the omission of criminal penalties from the advisory was required and thus the district court properly admitted the blood test result. As we explained in Schoon , Birchfield did not abrogate the admissibility requirements in N.D.C.C. § 39-20-01(3). Schoon, 2018 ND 210, ¶¶ 11, 13-17, 917 N.W.2d 199.
[¶ 13] "The Legislature has directed that a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a criminal or administrative proceeding." State v. O'Connor , 2016 ND 72, ¶ 13, 877 N.W.2d 312. For chemical test results to be admissible, N.D.C.C. § 39-20-01(3)(b) requires all of the information in subsection (a) to be communicated. O'Connor , at ¶¶ 8, 11 (applying the same 2015 revision of N.D.C.C. § 39-20-01(3) at issue here).
[¶ 14] The dissent, at ¶ 26, would invoke the broad legislative objective of preventing driving under the influence as a justification for this Court to reinterpret the statutory means in view of how well the enacted means achieve the desired ends. The desired ends of legislation may in some cases inform our interpretation of the words and phrases enacted into law as a means to those ends. But we cannot give effect to unenacted intention. N.D.C.C. § 1-02-05. No statute can perfectly anticipate every scenario. In pursuing the ends of highway safety, the means chosen by the Legislative Assembly may be underinclusive, overinclusive, or both. It is for the Legislative Assembly alone to amend a statute through legislation rather than litigation when its carefully crafted statutory means fail to achieve its desired ends.
*501 N.D. Legislative Assembly v. Burgum , 2018 ND 189, ¶ 73, 916 N.W.2d 83 ; County of Stutsman v. State Historical Soc. , 371 N.W.2d 321, 330 (N.D. 1985) (holding that a government entity may not successfully assert a violation of federal constitutional rights "because it is not a person or private party").
[¶ 15] The dissent, at ¶ 30, would rely on the presumption that when the Legislative Assembly enacts a statute, "[c]ompliance with the constitutions of the state and of the United States is intended." N.D.C.C. § 1-02-38(1). In January 2015, this Court unanimously rejected a Fourth Amendment challenge to a statute imposing a criminal penalty for refusal of a warrantless blood test against Fourth Amendment challenge. State v. Birchfield , 2015 ND 6, 858 N.W.2d 302. The version of § 39-20-01 at issue here became effective on April 15, 2015. The U.S. Supreme Court granted certiorari in December, and in June, 2016, reversed our decision in Birchfield v. North Dakota , --- U.S. ----, 136 S. Ct. 2160, 195 L.Ed.2d 560 (2016). A presumed intent to comply with constitutional limitations when § 39-20-01 was enacted would be in reference to the Fourth Amendment as explained by the courts up to that point. The standard by which the Assembly presumably legislated between January and April 2015 was the then-recent decision of this Court upholding criminal penalties for refusal of warrantless blood tests, along with the associated implied consent and admissibility standards. The later reversal of our decision by the U.S. Supreme Court could not retroactively alter the legislative intent or the proper interpretation of the enacted law expressing that intent. The Legislative Assembly fixes its intent in the words it enacts into law. Neither the canon of constitutional avoidance nor the § 1-02-38 presumption of constitutional compliance presumes the Legislative Assembly legislated to avoid constitutional decisions that were not yet announced. See Lowe v. S.E.C. , 472 U.S. 181, 227, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) (White, J., concurring) (criticizing constitutional avoidance analysis relying on assumption that Congress had the "ability to predict our constitutional holdings 45 years in advance").
[¶ 16] Because Birchfield did not abrogate the requirements of N.D.C.C. § 39-20-01(3), Schoon , 2018 ND 210, ¶¶ 18-24, 917 N.W.2d 199, our decision in O'Connor requires the driver be informed of the entire statutory warning. We defer to the district court's finding that Deputy Lloyd did not provide the entire warning, and conclude that the blood test is inadmissible as a result. The motion to suppress the blood test result should have been granted.
[¶ 17] Bohe also argues that his consent was coerced and the obtaining of his blood was an unlawful search. We need not address those arguments here as they are unnecessary to the decision.
III
[¶ 18] We reverse the criminal judgment and the district court's order denying Bohe's motion to suppress the blood test evidence.
[¶ 19] Jerod E. Tufte
Jon J. Jensen