# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2018 ND 255

Dustin Alan LeClair,                                                               Appellee

v.

Thomas Sorel, Director, Department of Transportation,                    Appellant

No. 20180155

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Lee M. Grossman, Fargo, N.D., for appellee.

Douglas B. Anderson, Assistant Attorney General, Bismarck, N.D., for appellant.

**Tufte, Justice.**

[¶1]     The North Dakota Department of Transportation appeals from a district court judgment reversing the Department's decision to suspend Dustin Alan LeClair's driving privileges. The Department argues the district court erred in reversing its decision to suspend LeClair's license because the officer's recitation of the implied consent advisory, which excluded the word "punishable," substantially complied with N.D.C.C. § 39-20-01(3)(a). We reverse the district court's judgment and reinstate the Department's decision to suspend LeClair's driving privileges.

I

[¶2]     On November 27, 2017, a West Fargo police officer made contact with LeClair after seeing a car being driven with "extremely bright lights." The officer observed LeClair had bloodshot eyes and slurred speech, and a strong odor of alcohol was coming from the vehicle. The officer administered field sobriety tests, which indicated LeClair was impaired. LeClair consented to an onsite screening test that revealed a blood alcohol level above the legal limit.

[¶3]     LeClair was arrested for driving under the influence and taken to the Cass County jail. At the jail the officer read an incomplete implied consent advisory to LeClair before administering an Intoxilyzer chemical breath test. The officer advised that refusal to submit to a chemical breath test was "a crime in the same manner as driving under the influence." The officer's advisory failed to include the word "punishable" as written in N.D.C.C. § 39-20-01(3)(a) ("a crime punishable in the same manner as driving under the influence").

[¶4]     At the administrative hearing LeClair objected to admission of the Intoxilyzer test results, arguing the implied consent advisory was incomplete. The hearing officer overruled the objection and suspended LeClair's driving privileges for two years.

LeClair appealed the decision to the district court, which reversed the Department's decision and reinstated LeClair's driving privileges.

## II

[¶5]  The Administrative Practices Act governs the review of a decision to suspend driving privileges. We must affirm an agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

[¶6]  Great deference is afforded to the agency's factual determinations:

> We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. A hearing officer's evidentiary rulings are reviewed under the abuse of discretion standard. A hearing officer abuses her discretion when she acts in an arbitrary, unreasonable, or capricious manner or misapplies or misinterprets the law. Questions of law are fully reviewable.

*Filkowski v. Director, North Dakota Dep't of Transp.*, 2015 ND 104, ¶ 6, 862 N.W.2d 785 (internal quotations and citations omitted).

## III

[¶7] The Department argues LeClair's Intoxilyzer test results are admissible under N.D.C.C. § 39-20-01(3)(b) because the implied consent advisory read by the officer substantially complied with the advisory in N.D.C.C. § 39-20-01(3)(a). We conclude the advisory given to LeClair was substantively complete and in compliance with the statutory requirement; thus, the test results were admissible.

[¶8] An arresting officer may request an individual to submit to chemical testing to determine alcohol concentration via blood, breath, or urine. Under N.D.C.C. § 39-20-01(3)(b), a breath test is not admissible in an administrative proceeding if the arresting officer fails to inform the individual as required under N.D.C.C. § 39-20-01(3)(a). Under N.D.C.C. § 39-20-01(3)(a):

> The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual *refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence.* If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant.

(Emphasis added.)

[¶9] The implied consent statute directs that specific information must be communicated by law enforcement to an individual arrested for driving under the influence. N.D.C.C. § 39-20-01(3)(a); *State v. O'Connor*, 2016 ND 72, ¶¶ 8, 11, 877 N.W.2d 312. *See also O'Connor*, at ¶ 18 (VandeWalle, C.J., concurring specially) ("the Legislature has established a bright line and the statutes leave no room for this Court to engage in a determination of legislative intent or whether or not a person was disadvantaged by an incorrect or incomplete advisory"). Unless all substantive information in N.D.C.C. § 39-20-01(3)(a) is communicated to the driver, chemical test results are not admissible. N.D.C.C. § 39-20-01(3)(b). The consequence of an officer's failure to convey the required information is exclusion of the test results. *Id.*;

3

*O'Connor*, at ¶ 14; *State v. Bohe*, 2018 ND 216, ¶ 16, 917 N.W.2d 497; *Schoon v. North Dakota Dep't of Transp.*, 2018 ND 210, ¶ 19, 917 N.W.2d 199.

[¶10] Here, the Department argues the officer's advisory complied with N.D.C.C. § 39-20-01(3)(a) despite his omission of the word "punishable." We agree and conclude that the advisory given here was substantively complete and that "refusal to take a breath or urine test is a crime [] in the same manner as driving under the influence" satisfies the statutory command that the "individual charged" (the driver) has been "inform[ed]" as required by N.D.C.C. § 39-20-01(3)(a).

[¶11] We have never held that § 39-20-01(3)(a) must be read word-for-word—only that the substance must be conveyed in a way "reasonably calculated to be comprehensible to the driver." *State v. Ayala*, 2017 ND 126, ¶¶ 8-9, 894 N.W.2d 865 (recognizing that reading the advisory ordinarily will be sufficient). Although the preferred approach is to use the language of subdivision 3(a), it is only for substantive omissions that we have concluded an advisory was deficient. *O'Connor*, 2016 ND 72, ¶ 3, 877 N.W.2d 312 (holding insufficient an advisory lacking "is a crime punishable in the same manner as driving under the influence"); *Bohe*, 2018 ND 216, ¶ 7, 917 N.W.2d 497 (holding insufficient an advisory omitting a warning that refusal is a crime punishable in the same manner as DUI); *Schoon*, 2018 ND 210, ¶ 4, 917 N.W.2d 199 (same).

[¶12] The parties agree that omission of an "a," "an," or "the" would not result in an insufficient advisory. Similarly, omission of the word "punishable" must be considered with respect to whether there is a loss of information conveyed. Because the relevant inquiry is an advisory's substantive completeness and not recitation of the precise statutory words, we must determine whether omission of the word "punishable" changed the substantive meaning of the advisory given to LeClair. A "crime" is "[a]n act that the law makes punishable." *Black's Law Dictionary* 451 (10th ed. 2014). "[P]unishable" means "subject to a punishment" (persons) or "giving rise to a specified punishment" (crimes or torts). *Id.* at 1428. A "punishment" is "[a] sanction—such as a fine, penalty, confinement, or loss of property, right or

privilege—assessed against a person who has violated the law." *Id.* Because all crimes are by definition punishable, it is necessarily the case that a "crime . . . in the same manner as driving under the influence" is a crime punishable in the same manner as driving under the influence.

[¶13] A driver who is told that "refusal is a crime in the same manner as driving under the influence" is informed that "refusal is a crime." It is a necessary presumption of the advisory scheme that a driver understands each word in the statutory advisory, including what it means for something to be a crime. If something is a crime, punishment may follow. A "crime in the same manner" as driving under the influence informs the driver that the crime of refusal is like, or shares significant characteristics of, the crime of driving under the influence. Because the potential for punishment is the core of the definition of what is a "crime," the linking of the crimes of refusal and driving under the influence with "in the same manner" tells the driver that these crimes are alike, at least in this core aspect of punishment. That is in fact an accurate description of the two statutory offenses; thus, even without the word "punishable," the advisory provides the driver with all information required by subdivision 3(a). Omission of the word "punishable" is not fatal to the advisory so long as the word "crime" is communicated to the driver. The wording used by the officer here was substantively complete and reasonably calculated to convey the entire substance of the advisory.

[¶14] The Legislature prescribed the advisory in terms of what the arresting officer "shall inform the individual." N.D.C.C. § 39-20-01(3)(a). Despite the omitted word, the officer conveyed the entire substance of the advisory. The substantively complete advisory given to LeClair complied with the strict requirements of N.D.C.C. § 39-20-01(3)(b), and the test result was admissible.

IV

[¶15] We reverse the district court's judgment and reinstate the Department's decision to suspend LeClair's driving privileges.

5

[¶16]   Jerod E. Tufte
        Lisa Fair McEvers
        Jon J. Jensen

**Jensen, Justice, concurring specially.**

[¶17]   I agree with the well-written majority opinion and I have signed that opinion. I write specially to note my agreement with the dissent's observation that "the advisory and the statutory exclusionary rule have proven problematic . . . ." Crothers, J., dissenting at ¶ 30.  I join in the dissent's call for modification of the law.

[¶18]   Jon J. Jensen

**Crothers, Justice, dissenting.**

[¶19]   I respectfully dissent.

[¶20]   The officer's implied consent advisory excluded the word "punishable."  The majority excuses that omission by allowing "substantial compliance" with N.D.C.C. § 39-20-01(3)(a).  I believe that approach is ill-advised because it begins the erasure of our heretofore bright line reliance on the advisory language in N.D.C.C. § 39-20-01(3)(a).  Erasure of the bright line will place future district courts in the position of guessing which omission might have been meaningful to a particular driver, and guessing what any majority of this Court might think is "substantial compliance" with the mandatory advisory.

[¶21]   The Department argues and the majority agrees LeClair's Intoxilyzer test results are not subject to exclusion under N.D.C.C. § 39-20-01(3)(b) because the officer's implied consent advisory substantially complied with the advisory in N.D.C.C. § 39-20-01(3)(a). Majority opinion, at ¶ 1.  I would conclude the advisory did not comply with the statutory requirement; thus the test results are not admissible.

[¶22]   An arresting officer may request an individual to submit to chemical testing to determine the operator's blood-alcohol concentration.   Under N.D.C.C. § 39-20-01(3)(b), a breath test is not admissible in a criminal or an administrative proceeding if the arresting officer fails to inform the individual as required under N.D.C.C. § 39-20-01(3)(a).

[¶23] The implied consent statute requires that specific information be communicated by law enforcement to an individual arrested for driving under the influence. N.D.C.C. § 39-20-01(3)(a); *State v. O'Connor*, 2016 ND 72, ¶¶ 8, 11, 877 N.W.2d 312. *See also O'Connor*, at ¶ 18 (VandeWalle, C.J., specially concurring) ("the Legislature has established a bright line and the statutes leave no room for this Court to engage in a determination of legislative intent or whether or not a person was disadvantaged by an incorrect or incomplete advisory."). The legislature has directed that exclusion of the test results is the consequence for an officer's failure to convey the required information. N.D.C.C. § 39-20-01(3)(b); *O'Connor*, at ¶ 14; *State v. Bohe*, 2018 ND 216, ¶ 16, 917 N.W.2d 497; *Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, ¶ 19, 917 N.W.2d 199.

[¶24] Here the majority holds only substantial compliance with N.D.C.C. § 39-20-01(3)(a) is required, and giving a "substantively complete" advisory is permissible for admission of the chemical test results. Majority opinion, at ¶ 13. By doing so the majority effectively holds the word "punishable" is surplusage, and suggests other words also can be excluded so long as the law enforcement officer speaks the essence of the legislature's intent.[1] I disagree for a number of reasons.

[¶25] First, we presume the legislature meant what it said and said what it meant.

> "As previously noted, however, this Court must presume the legislature meant what it said and said all it intended to say. We must further presume that the legislature made no mistake in expressing its purpose and intent. 'Consequently, we will not correct an alleged legislative "oversight" by rewriting unambiguous statutes to cover the situation at hand.' N.D.C.C. § 1-02-05 ('When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'). This Court is not free to 'amend' or 'clarify' the clear language of the statute, and 'if changes are to be made in the statute, we leave that matter to the legislature, as "it is for the legislature to determine policy, not for the courts.""

---

[1] I agree the omission of an article likely would not render the advisory invalid. *See* majority opinion, at ¶ 12. I am unwilling to agree the omission of an "a," "an," or "the" would never render an advisory invalid.

7

*Estate of Christeson v. Gilstad*, 2013 ND 50, ¶ 14, 829 N.W.2d 453 (internal citations omitted). By picking and choosing which words of the advisory are close enough to those in the statute we are deviating from this rule and instead are pursuing the legislature's intent at the expense of the words it used.

[¶26] Second, the word "punishable" is a meaningful and substantive part of the implied consent advisory. The sentence of the statute as edited by the majority says refusal of the chemical test "is a crime in the same manner as driving under the influence." Majority opinion, at ¶ 13. Maybe it only matters to lawyers and judges, but the majority's statement is not accurate. Refusal to submit to chemical testing is not driving under the influence. A review of the 2013 legislative history for these provisions shows why that is true. In 2013 the legislature attempted to remove an incentive for an operator to avoid a driving under the influence charge by refusing chemical testing. It did so by criminalizing refusal and making the punishment for refusal the same as driving under the influence. 2013 N.D. Sess. Laws ch. 301, § 7. The legislature also mandated that the advisory be given. *Id.* at § 11. Because of this background, the majority's result might make sense if the officer omitted the word "crime," and advised that refusal and driving under the influence are subject to the same punishment. But refusal to submit to chemical testing and driving under the influence are different criminal acts.

[¶27] Third, because N.D.C.C. § 39-20-01(3) requires law enforcement to advise individuals in a specific manner, courts are not free to permit the reading of an incomplete implied consent advisory. *See O'Connor*, 2016 ND 72, 877 N.W.2d 312; *Bohe*, 2018 ND 216, 917 N.W.2d 497; and *Schoon*, 2018 ND 210, 917 N.W.2d 199. *Cf. Korb v. North Dakota Dep't of Transp.*, 2018 ND 226, ¶ 12, 918 N.W.2d 49 (Information read to an arrested driver in addition to the statutory advisory "must not materially mislead or coerce the driver. If the additional language provided by the officer is accurate, its presence does not alter the sufficiency of a complete, accurate implied consent advisory under N.D.C.C. § 39-20-01(3).").

[¶28]  In *Schoon* this Court answered how the statutory advisory language must be read:

> "As we explained in *State v. O'Connor*, 2016 ND 72, 877 N.W.2d 312, this provision sets out clear and specific instructions for exactly what information must be communicated to a driver who is arrested for driving under the influence. Subdivision (b) strictly requires communicating all the information required by subdivision (a) before a test result is admissible. *O'Connor*, at ¶¶ 8, 11 (applying same version of § 39-20-01(3) at issue here). Considering only the statute as explained by *O'Connor*, the advisory was incomplete and thus inadmissible under subdivision (b)."

*Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, ¶ 12, 917 N.W.2d 199.

[¶29]  In *O'Connor* this Court stated:

> "The Legislature has directed that a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a criminal or administrative proceeding. 'We give special deference to the Legislature when a[n implied consent] statute governing admissibility of evidence is part of a legislative design that essentially authorizes and creates the item of disputed evidence.' (Internal citations omitted.) Adopting the State's arguments here would eviscerate the 2015 amendment to N.D.C.C. § 39-20-01(3)."

*State v. O'Connor*, 2016 ND 72, ¶ 13, 877 N.W.2d 312.  In *O'Connor* we also explained how and why the *O'Connor* and *Schoon* holdings differed from our earlier holding in *State v. Salter*:

> "When *Salter* was decided, N.D.C.C. §§ 39-20-01 and 39-20-14 (2007) required identical implied consent advisories be given before submission to the screening test and the chemical test. Neither statute stated any consequence for an officer's failure to strictly comply with those requirements. Under the reasoning of *Salter*, the consequence for an officer's failure to comply with the statutory procedures required the district court to determine whether the defendant voluntarily gave 'actual consent' for the chemical test under the Fourth Amendment. 2008 ND 230, ¶¶ 6, 7, 10, 758 N.W.2d 702. The statute has changed since *Salter* was decided. In 2013 the Legislature made refusal to take either a screening test or a chemical test a crime, *see, e.g.*, *State v. Smith*, 2014 ND152, ¶ 9, 849 N.W.2d 599, and in 2015 the Legislature attached specific consequences to an officer's failure to give the advisory *after* the defendant's arrest and before submitting to a chemical test. *See* 2015 N.D. Sess. Laws ch. 268, § 9. Although two

9

advisories have been required under the implied consent laws, the Legislature now has dictated that the test 'is not admissible in any criminal or administrative proceeding' if the officer fails to inform the 'individual charged' of the implied consent advisory before a chemical test. N.D.C.C. § 39-20-01(3)(b)."

*Id.* at ¶ 11.

[¶30] Under the law applicable to this case, the legislature requires the advisory, and requires suppression of chemical test results if law enforcement fails to give the required advisory. *See* N.D.C.C. § 39-20-01(3)(a) and (b). Both the advisory and the statutory exclusionary rule have proven problematic, and I have advocated for modification of the law. *See Schoon*, at ¶ 35 (Crothers, J., specially concurring). Unless and until the statutory advisory or exclusionary requirement is repealed, the courts should follow the directives in N.D.C.C. § 39-20-01(3). I dissent from the majority opinion, which I believe fails to do so.

[¶31] Daniel J. Crothers

**VandeWalle, Chief Justice, dissenting.**

[¶32] I join in Justice Crothers' dissent with the exception of its reliance on *State v. Bohe*, 2018 ND 216, 917 N.W.2d 497 and *Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, 917 N.W.2d 199.

[¶33] Gerald W. VandeWalle, C.J.

10